**Emma YAZZIE et al., Plaintiffs,**

**v.**

**Rogers C. B. MORTON, and Elliot L. Richardson, Defendants.**

**No. Civ. 71–601–PHX.**

United States District Court,
D. Arizona,
Phoenix Division.

Jan. 15, 1973.

Donald Juneau and Richard B. Collins, Jr. (Argued), Window Rock, Ariz., Jonathan Adler, Los Angeles, Cal., for plaintiffs.

William C. Smitherman, U. S. Atty. by Richard Allemann, Asst. U. S. Atty.,

Phoenix, Ariz., David W. Miller (Argued), and William M. Cohen, U. S. Dept. of Justice, Washington, D. C., for defendants.

John J. Bouma, Snell & Wilmer (Argued), Phoenix, Ariz., Donald E. Dickerman, Holesapple, Conner, Jones, McFall & Johnson (Argued), Tucson, Ariz., Russell Moore, Keleher & McLeod, Albuquerque, N. M., Rex E. Lee, Jennings, Strouss & Salmon, Phoenix, Ariz., for intervenors.

## OPINION AND ORDER

FREY, District Judge.

Plaintiffs in this case are five members of the Navajo Tribe. The complaint seeks injunctive and declaratory relief.

The defendants are the Secretary of the Department of Interior and Secretary of the Department of Health, Education and Welfare. Parties who might be affected by the outcome of the case such as the power companies involved have been allowed to intervene. The case was originally filed in Washington, D. C. and transferred to Arizona on motion of defendants and intervenors.

The complaint generally contends that the Secretary of the Department of Interior has breached a fiduciary duty owed to the Navajo Tribe; that the Secretary of Health, Education and Welfare is breaching his duties to the Navajos.

The defendants and intervenors filed motions to dismiss and/or for summary judgment.

The cornerstone issue which we are here involved with is whether the Navajo Tribe is an indispensable party to have a just and complete adjudication of the issues in the case. If the Navajo Tribe is such an indispensable party, we then have a second issue raised, i. e., whether it can be made a party to this action and if not whether the action should be dismissed. We view these issues generally in light of Rule 19, Federal Rules of Civil Procedure and the following cases: Provident Tradesmens B. & T. Co., v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), Schutten v. Shell Oil Company, 421 F.2d 869 (5 Cir., 1970); Ferguson v. Thomas, 430 F.2d 852 (5 Cir., 1970); Morrison v. New Orleans Public Service Inc., 415 F.2d 419 (5 Cir., 1969).

The basic subject matter of this lawsuit is certain leases and agreements negotiated between the intervenors and the Tribe with the approval of the defendant Secretary of Interior. Plaintiffs complain that said leases contain certain provisions which do not adequately protect the Navajo people and Navajo lands against air pollution, and that the Secretary of Health, Education and Welfare has failed to perform adequate monitoring of pollution emitted from the power plant to determine adverse health effects of such pollution in areas where plaintiffs live. Plaintiffs further claim that federal defendants have failed in a fiduciary duty to protect and care for the Indians as wards of the federal government.

The leases involved were entered into in 1960 and 1966. Also, a section of coal bearing land was granted to the intervenors. These leases and the grant will be called simply the agreements. A coal-fired power generating plant, some transmission lines and the coal deposits are all located on the Navajo Reservation.

Plaintiffs seek relief for themselves and other members of the Navajo Tribe for alleged trust violations resulting from the agreements. This appears to be a back door method of either asserting a class action or attempting to represent the Tribe without approval or authority.

The plaintiffs seek the cancellation of certain paragraphs of the lease and their removal from the lease. The plaintiffs do not specifically seek renegotiation of such subject paragraphs. The subject paragraphs complained of provide the Tribe with protection from the very

damages the plaintiffs complain of. The plaintiffs allege that the provisions sought to be voided are " . . . inimical to the health, welfare and economic well-being of plaintiffs." The plaintiffs also state:

"The Court is not being asked to order rewriting of the lease or right-of-way grant. This will be left to the parties to the lease to renegotiate if the Court finds that there has been a breach of fiduciary duty with regard to certain provisions."

Plaintiffs in their argument assure the Court that the Tribe's interests will not be adversely affected because the agreements remain in force. However, going along with plaintiffs' position means one of two results must necessarily occur:

1. The Tribe, stripped of its protective paragraphs by the plaintiffs' action, must continue to allow the intervenors to operate the power plants whether or not the questioned paragraphs are renegotiated or approved by the Secretary of Interior; or,

2. The power plant will be shut down by action of the Court or the Secretary of Interior until the questioned provisions are approved by the parties to the agreements, the Secretary of the Interior, the plaintiffs and the Court. The approval of the Court appears to be necessary, since any renegotiated provisions of the lease must meet with the approval of the plaintiffs. If the renegotiated lease does not meet with the approval of the plaintiffs, they can aver that the Secretary of Interior has failed to obey the Court's injunction sought herein. Either this action remains open to accomplish plaintiffs' purposes or other actions will follow.

Plaintiffs are attempting to assert their will on the whole Navajo Tribe concerning the agreements involved. This could be to the detriment of the Tribe, and/or other members. There are proper procedures which plaintiffs could use to bring about the result they want this Court to achieve. There are Tribal remedies.

■ The Court does not now see a need to rule upon all of the jurisdictional issues raised or involved in this case, including the standing of the plaintiffs to bring this suit. The Court will discuss plaintiffs' standing however, only in light of deciding this case on the narrow issue of whether the Navajo Tribe is an *indispensable party*. In this connection, the first matter to be determined is whether the Navajo Tribe is a person or party needed for full, just and proper adjudication of this lawsuit.

To determine if the Navajo Tribe is an indispensable party, we must look at what plaintiffs seek. The plaintiffs seek to have nine (9) paragraphs of the agreements cancelled. These nine paragraphs give no special rights to the individual plaintiffs and only affect them and protect them as members of the Tribe. The paragraphs sought to be cancelled are paragraphs 8, 9 and 17 of the 1960 lease, paragraphs 13, 14, 22 and 44 of the 1966 lease and paragraphs 8 and 34 of the Section 323 Grant.

These paragraphs may be broken down in four subject areas.

Paragraph 8 of the 1960 lease and paragraph 13 of the 1966 lease require that the power companies *pay to the Tribe*, for the benefit of its individual permittees, the direct and reasonable damages resulting from impairment of their use or permit rights. These damages would compensate the Tribal permittees for buildings or structures belonging to them as well as damage to crops arising as a consequence of construction and operation of the power plants and auxiliary facilities. Paragraph 13 of the 1966 lease adds damages for loss of grazing areas and provides for fencing of certain areas injurious to livestock.

Under the agreements only the Tribe can enforce these rights; the Tribe is

then a necessary party to protect the Tribal interests. The Tribal authorities have a duty to protect the economic welfare of Tribe members. Under the language in both leases, *the Tribe* is to be reimbursed for any and all damage to permittees. The issue of whether this provision should be cancelled could spell economic ruin for the Tribe and its affected members depending on the decision. The requirement that the Tribe be paid for loss of crops and grazing area directly affects the economic interest of the Tribe, since the Tribe controls the fee simple; actual title is in the United States. Tribal members such as plaintiffs merely hold permits. Plaintiffs have a remedy under this part of the agreement for money damages. However, the Tribe has sole authority to assert such a claim and the Tribe cannot protect its interests or the interest of its members unless it is a party. Further, without the Tribe in this case, the Federal defendants could incur a double obligation, because the Tribe could bring action against them for not protecting Tribal interests. For this lawsuit to proceed without the Tribe would most likely cause a number of other lawsuits to be brought by either the Tribe or the United States on behalf of the Tribe against the intervenors (power companies), and lawsuits by the individual Indians against the Tribe and/or the power companies. Also, the Tribe and its members may want the subject paragraphs to remain as they are in the original leases; thus the Secretary of Interior would be forced into a position where he could be subjected to a lawsuit by the Tribe and the power companies for doing what plaintiffs want the Court to compel him to do in this case.

Paragraph 9 of the 1960 lease, paragraph 14 of the 1966 lease and paragraph 8 of the Section 323 Grant provide for control of air pollution. Paragraph 8 of the Section 323 Grant is the most extensive as far as pollution control and reporting is concerned. Under the provisions of the paragraphs cited, the power companies must comply with all valid state and federal air pollution standards and/or regulations or laws now or hereafter in force. They must comply with certain minimum standards and maintain commercially feasible pollution devices. The intervenors must during regular business hours make available to the Secretary of the Interior records of tests and measurements of air pollution. The cancellation of these provisions would take a burden off the power companies, and would relieve the Secretary of Interior of a duty he now has to the Tribe to check upon the pollution devices and require the most modern devices every ten years, consistent with the economics of the power plants. In the future, economically feasible pollution devices which may exceed federal and state standards could be required under the paragraphs as now written. The Tribe no doubt would subject the Secretary of Interior and the intervenors to double obligations if we adopt plaintiff's views and thereafter the disputed contracts were not renegotiated by the parties to the satisfaction of plaintiffs. The cancellation of the lease paragraphs as sought by plaintiffs would either leave the Tribe with no say in the control of pollution or could cause the plant to shut down.

Paragraph 44 of the 1966 lease and paragraph 34 of the Section 323 Grant concern arbitration of matters pertaining to air and water pollution. Under such paragraphs, three arbitrators are appointed, one by the lessees, one by the Secretary of the Interior and one agreed upon by the two arbitrators for the parties mentioned. If after thirty days, the arbitrators cannot agree on a third arbitrator, either side may make application to the Chief Judge of the United States District Court for the District of New Mexico for the appointment of an arbitrator. The decision of any two arbitrators shall be binding upon the signatories to the lease. The deletion of such

arbitration paragraphs may cause the initiation of much litigation concerning pollution matters and may delay installation of proper pollution devices, because of long delay in the trial and appeal procedures. The arbitration paragraphs provide for a quick resolution of a dispute. Unilateral decisions by the Secretary of Interior with respect to such matters may subject him to legal action by the Tribe for such decisions. The Tribe could easily claim that the Secretary's decision unjustly closes the plant. Such closures are sought by the plaintiffs in their complaint. Without the Tribe being a party to the present action, the Secretary may well be open to many suits from the Tribe resulting from his doing what plaintiffs want the Court to compel him to do.

Paragraph 17 of the 1960 lease and paragraph 22 of the 1966 lease states the Tribe will not directly or indirectly regulate or attempt to regulate construction, maintenance, operation of the power plants and auxiliary facilities or its rates, charges, operating practices, procedures, safety rules, or other policies or practices or sales of power. But the Tribe does not waive its power to control retail sales and distribution *on the Reservation.*

The cancellation of these paragraphs may involve the Tribe, the Secretary, the lessee-power companies in numerous legal disputes and causes of action if the Tribe attempts to regulate the plants or the operation of the power companies. This type of interference may cause the companies to bring suits against the Tribe. There is no legal way to force the Tribe to renegotiate these portions of the leases as plaintiffs would require, if it is not a party to this lawsuit.

The Tribe has a vested economic interest in having the plant operate and not shut down even temporarily. Under provisions of both leases, Navajo Indians are to be hired, when available, in all positions for which they are qualified, at prevailing wages. This is a right the Tribe contracted for its members and if the plant was shut down, these members of the Tribe will be adversely affected.

The Utah Mining Company mines coal on the Navajo Reservation for consumption in the Four Corners Power Plant. All the coal mined by the Utah Mining Company is used in the power plant and the Tribe receives fifteen cents for every ton of coal burned in the power plant. It is apparent that the plaintiffs desire something other than the status quo in regard to the operation of the plant. Any reduction in generation of electricity or a complete shut down of the plant will affect the Tribe's income.

The plaintiffs allege in several places in the complaint that defendant Morton breached his fiduciary duty *to the plaintiffs* in that he did not require that the power companies to do certain acts and that said defendant *failed to require a reduction or stoppage of the generation of electricity* when the power companies failed to perform required acts.

It is not speculative, as the plaintiffs argue, that the Tribe will lose revenue if the power plant reduces or stops generation of power, it is certain. The prayer for relief in the complaint asks a mandatory injunction ordering defendants Morton and Richardson to take any and all additional steps to protect the plaintiffs and other members of the Navajo Tribe of Indians living in the vicinity of the Four Corners Power Plant against all harmful or potentially harmful pollutants. While the plaintiffs do not indicate what steps should be taken, there seem to be three basic alternatives within reasonable foreseeability, assuming the complaint to be true and the relief sought above is granted:

1. The Secretary of Interior (Morton) can withhold approval of any parts of any renegotiated lease until they meet the requirements which might be set forth in the injunction;

2. He (Morton) can attempt to require a reduction or a curtailment of the

generation of electricity from the power plant until the Tribe and the intervenors agree upon pollution equipment which meets the standards the Court might set; or,

3. He can seek to have the Tribe relocate those persons found to be affected by the pollutants, to another part of the Reservation.

The first alternative denies the Tribe the benefits it loses by the cancellation of the contested paragraphs discussed above. As the case stands, any injunction or other relief granted in this case could not be enforced against the Tribe and any attempt by the Secretary of Interior to enforce a Court order could cause a suit or cause of action by the Tribe against the Secretary in another Court; for example, the District of New Mexico which is in the Tenth Circuit, the situs of the plant. Thus, the Secretary could be subjected to possible inconsistent obligations and/or Court decisions. Also, the Tribe not being a party to this action, could refuse to renegotiate any other agreement except that as set forth in the paragraphs plaintiffs want cancelled. Thus, plaintiffs would not ultimately be afforded the relief they seek; without the Tribe this lawsuit could be an exercise in futility.

The second alternative mentioned above, is to force the Tribe to accept standards imposed on it by five of its members through the mandatory injunction issued against the Secretary of Interior, or lose all the revenue from the coal. The Tribe's rights are thus substantially affected either by loss of revenue or by denial of due process of law. Also, this alternative may result in a Court decision that certain standards be met with commercially unproven air pollution control equipment; this may cause a shut down of the plant because technology may not exist to meet the standards the Court might set.

The third alternative mentioned above also makes the Tribe an indispensable party since Morton could seek to have the Tribe relocate the plaintiffs on other lands, thereby protecting the health and welfare of the plaintiffs. This step necessarily involves Tribal matters and the Tribe must be a party to accomplish such.

Finally, the Tribe is an indispensable party because the land in question is part of the Tribe's Reservation, any decision reached concerning the land directly affects the Tribe. Plaintiffs have no vested interest in any of the land involved, they are only permittees of the Tribe; their permits expire after a given period of time and at death. The Tribe has the superior and paramount interest in the land.

The Tribe, in leasing the necessary lands to the intervenors for the construction and operation of the power plant does so only as a Tribe consisting of all its members. Title 25, Section 415, U.S.C.A. Therefore, the Navajo Tribe in leasing the subject lands is acting in a communal capacity as a Tribe; in order for the plaintiffs to have any standing to bring suit, the Navajo Tribe is indispensable, since they only have an interest in the subject matter of this suit as members of the Tribe. For cases interpreting communal property rights see Whitefoot v. United States, 293 F.2d 658, 155 Ct.Cl. 127 (1961), United States v. Kabinto, 456 F.2d 1087 (9 Cir., 1972).

Having concluded that the Tribe is an indispensable party, the Court must now determine whether the Tribe can be joined as a party.

The Indian Tribes are dependent political nations and wards of the United States. They possess the attributes of sovereignty, insofar as same has not been taken away by Congress. Groundhog v. Keeler, 442 F.2d 674 (10 Cir., 1971). The Navajo Tribe is a Tribe recognized in two treaties by the United States. The Navajos have certain rights as a sovereign nation or people under the care of and subject to the power of the United States. The sover-

eign immunity of the Navajo Tribe is coexistent with that of the United States. Hamilton v. Nakai, 453 F.2d 152 (9 Cir., 1972). The Navajo Tribe is immune from suit as a sovereign nation subject only to the will of Congress, which may waive such sovereignty. Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., 231 F.2d 89 (8 Cir., 1956). As the plaintiffs repeatedly point out, the Navajo Tribe, themselves included, are in the tutelage of the United States, but they fail to perceive that under such tutelage, the Navajo Tribe is immune from suit. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). Twin Cities Chippewa Tribal C. v. Minnesota Chippewa Tribe, 370 F.2d 529 (8 Cir., 1967).

The Court having determined that the Tribe is an indispensable party which cannot be joined as a party to this suit, must now determine whether this suit should be dismissed. Rule 19(b), Federal Rules of Civil Procedure, sets forth four factors to be considered by the Court in deciding this issue. A recent Supreme Court case considered these four factors from an appellate prospective, since joinder was not considered until the appeal stage. The factors considered by the Court are stated differently, but are the same as stated in Rule 19. Provident Tradesmens B. & T. Co., v. Patterson, 390 U.S. 109, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Before considering these four factors, this Court is not unmindful of Green v. Wilson, 331 F.2d 769 (9 Cir., 1964) which could stand for the proposition that when an Indian Tribe is indispensable to an action and cannot be joined because it is immune from suit, it is proper to dismiss the action. However, since the motion to dismiss that case also cited other reasons; it appears further discussion is appropriate here.

The said four factors are hereafter considered in the order listed in Rule 19(b).

The first factor is "to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties". The Court has already discussed some of the problems connected with this factor earlier in this opinion. Briefly, restated, however, the subject matter of this suit is a lease in which the Tribe and the intervenors have great financial stakes involving perhaps the very existence of both parties to said lease. Any judgment rendered in favor of the plaintiffs affects the financial and social situation of the Tribe. The judgment the plaintiffs demand will be prejudicial to the intervenors, without the Tribe as a party, since they will be forced to renegotiate the leases with the Tribe subject to the "*approval*" of plaintiffs and of the Secretary of Interior, but the Tribe cannot be forced to renegotiate and can seek to enforce the present lease in Courts in New Mexico, the situs of the power plant. The Tribe will further be prejudiced by the fact that the leases would have to be renegotiated not only to the satisfaction of the Secretary of Interior but to the satisfaction of plaintiffs as expressed through order and judgment of the Court. Thus, the plaintiffs have obtained jurisdiction of Federal Court over a personal dispute plaintiffs may have with the Tribe and its government. This would allow plaintiffs to do indirectly that which cannot be done directly in this same Federal District Court. This attempt by the plaintiffs to force the intervenors and the Tribe to renegotiate the leases is clearly an attempt by five Navajos to force their will on the whole Tribe. This case clearly involves internal Tribal matters which should be left to the internal processes of the Tribe. Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., 231 F.2d 89 (8 Cir., 1956). To allow the plaintiffs to assert the jurisdiction of this Court over an internal matter which is not directly within the jurisdiction of this Court even if the Tribe were a party, is indeed all the

more prejudicial to the Tribe when it is not a party.

The second factor under Rule 19(b) is "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided". There can be no way of shaping relief to lessen or avoid prejudice to the Tribe unless the judgment be in favor of the defendants and/or intervenors. To prevent prejudice to the absent Tribe, the judgment would have to preclude the reducing or stopping of the generation of electricity at the plant and would have to preclude any renegotiating of the lease. It would also have to preclude any indirect attempt to do that which we state above must be precluded.

The third factor mentioned in 19(b) is "whether a judgment rendered in the person's absence will be adequate". This factor simply cannot be answered yes because the plaintiffs seek relief which cannot even be effective unless the Navajo Tribe can be made a party, because the Court cannot force the Tribe to comply with the judgment. Again, any judgment in this case can only be adequate if rendered for the defendants and/or intervenors thus keeping the status quo and not infringing upon the absent party's rights or interests.

The fourth factor involved in the Court's consideration is whether plaintiffs will have an adequate remedy if the action is dismissed for non-joinder. The plaintiffs, as previously observed, are seeking to by-pass their Tribe's internal decision-making authority by action in Federal Court. This action by plaintiffs directly affects the Tribe's financial, social or political position and is an internal matter over which the United States District Court has no jurisdiction. If plaintiffs are being damaged or injured as they contend, they may seek redress from or through the Tribe. This is an internal Tribal matter which can and should be resolved by the Tribe without outside interference. Plaintiffs have an adequate Tribal remedy to resolve their complaints. The Supreme Court has continually guarded the authority of Navajo government over its Reservation. Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). This Court must do the same.

■■ It is elementary that it is not within the power of any tribunal to make a binding adjudication of the rights of parties not before it in keeping with due process of law. National Licorice Co. v. National Labor R. Board, 309 U.S. 350, 362, 60 S.Ct. 569, 576, 84 L.Ed. 799 (1940). This Court must dismiss this cause of action for failure to join an indispensable party, the Navajo Tribe. Any decision granting plaintiffs anything they seek in this case will necessarily affect the rights and interests of the Tribe.

The Court having resolved that this action should be dismissed for failure to join the Navajo Tribe as an indispensable party, the Court does not reach the other issues raised in defendants' Motion for Summary Judgment or Intervenors' Motion to Dismiss such as laches by the plaintiffs, failure to join the United States as an indispensable party, lack of jurisdiction to review the actions of the Secretary of Interior in approving the agreements, lack of jurisdiction under the Federal mandamus statute (Title 28, Section 1361), failure to exhaust administrative remedies, standing of the plaintiffs to bring this action, etc.