## WILLIAMS v. UNITED STATES.
### No. 14168.

United States Court of Appeals,
Ninth Circuit.

Aug. 3, 1954.

Rehearing Denied Sept. 23, 1954.

H. Jackson Daniel, St. Louis, Mo., for appellant.

C. E. Luckey, U. S. Atty., Eugene, Ore., Robert L. Dressler, Asst. U. S. Atty., Portland, Ore., for appellee.

Before HEALY, ORR, and LEMMON, Circuit Judges.

HEALY, Circuit Judge.

In 1946 appellant was convicted in the United States court for the district of Oregon of the crime of murder and was sentenced to life imprisonment. Recently he moved in that court pursuant to 28 U.S.C.A. § 2255 for vacation of the sentence on the ground of lack of jurisdiction in a federal court to entertain the cause. The matter is before us upon appeal from an order denying the motion.

The indictment in the case alleged that appellant is an Indian ward of the United States, being carried on the tribal rolls of the Klamath Tribe. It charged that

on and within the confines of the Klamath Indian reservation in Oregon the accused murdered one Smith, also an Indian carried on the rolls of the Tribe. While the evidence taken at the trial is not before us, it was stated by the district judge, and is not disputed, that the proof showed both the slayer and his victim to be unemancipated Indians under the care and control of the Superintendent of the Klamath reservation. The crime was committed on land which had been patented in fee to certain Indian allottees and later sold by them to Hazel Hecocta, appellant's wife. Hazel was likewise an Indian who had not been emancipated. The land was within the confines of the reservation as established by treaty and statute.

The governing criminal statute is an act approved June 28, 1932, 47 Stat., Part I, page 336, amendatory of § 328 of the United States Criminal Code of 1910 and § 548 of Title 18 of the United States Code of 1926. So far as material this amendatory act provided: "All Indians committing against the person or property of another Indian or other person any of the following crimes, namely, murder, * * * on and within any Indian reservation under the jurisdiction of the United States Government, including rights of way running through the reservation, shall be subject to the same laws, tried in the same courts, and in the same manner, and be subject to the same penalties as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States * * *."

The statutes of which this act was amendatory were in all respects here material identical with the above, except that in lieu of the phrase "on and within any Indian reservation" they employed the phrase "within the limits of any Indian reservation," 35 Stat. 1151, and except that they did not contain the clause "including rights-of-way running through the reservation".

Appellant's argument, in a nutshell, is that the crime was not committed "on and within" an Indian reservation since, while physically within the limits thereof, the land on which it was committed had ceased to be a part of the reservation or had been removed therefrom by virtue of the issuance by the United States of patent thereto in fee simple. Several state cases are cited one or more of which tend in a measure to support this view. See particularly State v. Johnson, 1933, 212 Wis. 301, 249 N.W. 284.

The controlling decision, however, is United States v. Celestine, 215 U.S. 278, 30 S.Ct. 93, 54 L.Ed. 195. The charge in that case was of murder committed within the limits of the Tulalip reservation in Washington. Celestine was an Indian who had received United States patent for land on the reservation, and his Indian victim was the widow and successor in interest of the patentee of another parcel upon which latter tract the crime was perpetrated. The criminal statute involved was for all immediate purposes identical with the one here. The Court rejected the argument, which had prevailed below, that the patent issuance had removed the land from the reservation, saying at page 284 of 215 U.S., at page 94 of 30 S.Ct. of its opinion, that "both tracts remained within the reservation until Congress excluded them therefrom." It added at page 285 of 215 U.S., at page 96 of 30 S.Ct., that "when Congress has once established a reservation, all tracts included within it remain a part of the reservation until separated therefrom by Congress." While recognizing at pages 289–290 of 215 U.S. at page 95 of 30 S.Ct. that by the terms of the General Allotment of 1887 Celestine had been given citizenship in the United States and in the state of Washington, nevertheless, the Court said, "it does not follow that the United States lost jurisdiction over him for offenses committed within the limits of the reservation."

This court, in Eugene Sol Louie v. United States, 9 Cir., 274 F. 47, 51, analyzed the Celestine case and undertook

to distinguish it on the ground that the patents in Celestine had been issued under authority of the 1854 treaty with the Omahas, 10 Stat. 1043, and the 1855 treaty of Point Elliott, 12 Stat. 927, and that the first sentence of Section 6 of the General Allotment Act of 1887, as amended, 25 U.S.C.A. § 349, was applicable only to patents made under the authority of the General Act. "At once," said this court "we find a clear distinction between Celestine's Case and Louie's, in that the terms of the [1887] statute under which patent to Louie issued have made him 'subject to the laws, both civil and criminal, of the state or territory' in which he resides, whereas no such terms are found in the Celestine Case." We hardly need repeat that in the situation before us no patent had issued either to appellant or to his victim, so that *a fortiori* neither had become subject by virtue of the General Act to the criminal laws of the state of Oregon.

While the point has not been urged, it may be advisable to comment briefly on the substitution in the 1932 amendment of the words "on and within" for the former wording "within the limits of" any Indian reservation, as heretofore noted. Apparently the statute was amended, not for the purpose of narrowing the jurisdiction of the federal courts, but rather with the aim of extending or enlarging it. It will be recalled that the clause "including rights of way running through the reservation" had not appeared in the earlier statutes. In 1912 the Supreme Court had decided Clairmont v. United States, 225 U.S. 551, 32 S.Ct. 787, 790, 56 L.Ed. 1201. That case had to do with a crime allegedly committed by an Indian who was charged and convicted under a statute making it an offense to "attempt to introduce" ardent liquor into Indian country. The evidence disclosed that the Indian was found to have in his possession a pint of whiskey while traveling aboard a Northern Pacific train over the right-of-way of the Railroad Company where it passes through the Flathead Indian reservation. In 1882 the Flathead tribe, pursuant to agreement with the United States, and for a designated sum to be paid by the latter, had surrendered their title to a strip of the reservation two hundred feet in width as a right-of-way for the Northern Pacific Railroad, thus unreservedly extinguishing the tribal title to the area. The Court was of opinion that the relinquished strip came under the jurisdiction of Montana and was no longer Indian country, and so holding it reversed the conviction.

Apparently this decision, and perhaps others of similar import, created doubts and difficulties for the federal courts which Congress thought it essential to remove by having the statute explicitly cover offenses committed on rights-of-way through reservations. The concurrent substitution of the phrase "on and within" for the former wording would seem to have no significance other than grammatical.

In 1948, 62 Stat., c. 645, Part I, C. 53, pp. 757–758, Congress undertook further clarification by defining in Section 1151 the term "Indian country" as including all land within any Indian reservation, "notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation." And by Section 1153 it changed the phraseology of the general criminal statute, heretofore quoted, by substituting the term "Indian country" for the term "Indian reservation." We have found in the legislative history no intimation, and none has been called to our attention, that these enactments were intended to effect any change in Congressional policy.

So far as presently concerns the Klamath and certain other reservations, it appears that Congress has since conferred upon the state courts jurisdiction over crimes committed thereon. 67 Stat. 588, 18 U.S.C.A. § 1152.

Order affirmed.