**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Theodore Floyd BURLAND, Defendant-Appellant.**

**No. 26088.**

United States Court of Appeals,
Ninth Circuit.

April 22, 1971.

**1200**

Alden W. Pedersen (argued), Billings, Mont., for appellant.

Eugene A. Lalonde, Asst. U. S. Atty., (argued), Otis L. Packwood, U. S. Atty., Billings, Mont., for appellee.

Before CHAMBERS, BROWNING and ELY, Circuit Judges.

BROWNING, Circuit Judge:

Appellant is an enrolled member of the Confederated Salish and Kootenai tribes living on the Flathead reservation in Montana. He traveled to the Fort Peck Indian reservation, also in Montana, and there passed a forged check to a non-Indian. He was tried and convicted in the United States District Court for the District of Montana. He contends that the court lacked jurisdiction both under the applicable statutes and as a matter of constitutional law.

1. Jurisdiction of the court rests upon sections 13, 1152, and 3231 of Title 18, United States Code. Section 3231 vests jurisdiction in the United States district courts, "exclusive of the courts of the States, of all offenses against the laws of the United States." Section 1152 provides that "the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States * * * shall extend to the Indian country," which admittedly includes the Fort Peck reservation. One of the "general laws" referred to is section 13 of Title 18, the Assimilative Crimes Act, which provides that whoever in a federal enclave commits an act which is not punishable under federal law but which would be punishable if committed in the state in which the federal lands are located, shall be guilty of a like offense and subject to like punishment.[1] In effect, this makes the Montana statute that prohibits passing forged checks (R.C.M.1947, 94–2001) part of the federal law applicable on the Fort Peck reservation, and thus subject to enforcement in the United States district court when, as here, the offense is committed by an Indian against a non-Indian.

Despite these statutory provisions, appellant argues that by reason of action

---

1. Section 1152, and hence section 13 also, apply only to offenses committed by or against Indians. Mull v. United States, 402 F.2d 571, 573 (9th Cir. 1968).

    Appellant does not argue that the statute is inapplicable to him because he was a member of a tribe other than the local tribe and was visiting from another reservation. Cf. United States v. Kagama, 118 U.S. 375, 383, 6 S.Ct. 1109, 30 L.Ed. 228 (1886).

taken by the Kootenai and Salish tribes and the State of Montana pursuant to section 7 of the Act of August 15, 1953, Public Law 280, 67 Stat. 588, he and other members of those tribes are no longer subject to federal criminal prosecution, but are subject only to state criminal prosecution, with respect to offenses included in the Assimilative Crimes Act.

■ The pertinent provisions of Public Law 280 are reproduced in the margin.[2] Acting pursuant to section 7 of the Act, the State of Montana obligated itself to assume criminal jurisdiction *"over Indians* and Indian territory of the Flathead Indian reservation and country within the state" (emphasis added), subject to specified conditions. R.C.M.1947, 83–801 through 83–806. It is conceded that the specified conditions were satisfied prior to the commission of the offense involved here.

Appellant argues that by these acts the federal government ceded and the

2. Chapter 505, Pub.L.No. 280:
"Sec. 2. Title 18, United States Code, is hereby amended by inserting in chapter 53 thereof immediately after section 1161 a new section, to be designated as section 1162, as follows:
'§ 1162. State jurisdiction over offenses committed by or against Indians in the Indian country
'(a) Each of the States listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over offenses committed elsewhere within the State, and the criminal laws of such State shall have the same force and effect within such Indian country as they have elsewhere within the State:

| 'State of | Indian country affected |
|---|---|
| California | All Indian country within the State |
| Minnesota | All Indian country within the State, except the Red Lake Reservation |
| Nebraska | All Indian country within the State |
| Oregon | All Indian country within the State, except the Warm Springs Reservation |
| Wisconsin | All Indian country within the State, except the Menominee Reservation' |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*
Sec. 4. Title 28, United States Code, is hereby amended by inserting in chapter 85 thereof immediately after section 1359 a new section, to be designated as section 1360, as follows:
'§ 1360. State civil jurisdiction in actions to which Indians are parties
'(a) Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:

| 'State of | Indian country affected |
|---|---|
| California | All Indian country within the State |
| Minnesota | All Indian country within the State, except the Red Lake Reservation |
| Nebraska | All Indian country within the State |
| Oregon | All Indian country within the State, except the Warm Springs Reservation |
| Wisconsin | All Indian country within the State, except the Menominee Reservation' |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*
Sec. 7. The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof."

State of Montana assumed criminal jurisdiction over *the people* as well as the lands of the Salish and Kootenai tribes.

■ We have quoted and italicized the only language in the Montana statutes which offers even inferential support for this interpretation. On the other hand, R.C.M.1947, 83–803 [3] expressly limits the assumption of jurisdiction to offenses committed "in the lands prescribed in the proclamation"—which, concededly, were the lands of the Flathead reservation. The Montana statute provides that the criminal laws of the state shall have the same force and effect "within such lands" as elsewhere in the state. Similarly, the tribal council ordinance approved the extension of the laws and jurisdiction of the State of Montana to Indians "within the Flathead Reservation." Ordinance of the Tribal Council of the Confederated Salish and Kootenai Tribes of the Flathead Reservation, Montana, No. 40–A (Revised), Adopted May 5, 1965.

The language of Public Law 280 indicates that Congress intended no more. Section 7 consented to state assumption of jurisdiction "as provided for in this Act." Section 2 provided that each of the listed states should have jurisdiction "over offenses committed * * * in the [listed] areas of Indian country" to the same extent that it had over offenses "committed elsewhere within the State," and that the criminal laws of the state should have the same force and effect "within such Indian country as they

have elsewhere within the State." Section 4 of the Act, which cedes civil jurisdiction to the states, employs the same geographic references.

The conclusion that Public Law 280 was intended to substitute state for federal jurisdiction on a geographic and subject matter basis rather than in terms of persons is supported by material in the legislative history. The House and Senate Committee reports describe the legislation as relating to "state jurisdiction over offenses committed by or against Indians *in the Indian country*" (emphasis added). U.S. Code Cong. & Admin. News 1953, p. 2409. It was noted that certain tribes "have advised Bureau officials of their objections to State jurisdiction, *and their reservation areas* have therefore been excepted in the transfer legislation * * *" (2412) (emphasis added).

Moreover, the Committee reports disclose that Public Law 280 was only part of a general legislative program and that other, separate legislation was contemplated to free individual tribes and the members of those tribes, as such, from "disabilities and limitations specially applicable to Indians" (2410). Many such statutes were subsequently enacted.[4] Each contained detailed provisions for distribution or management of affected property, removal of restrictions on property transfers, termination of trusts, tax exemptions, protection of incompetents, initiation of education and training programs, and other matters.

---

3. R.C.M.1947, 83–803:

"Date of assumption of jurisdiction—application of state law in Indian country. Sixty (60) days from the date of issuance of the proclamation of the governor as provided for by section 83–802, the state of Montana shall assume jurisdiction over offenses committed by or against Indians in the lands prescribed in the proclamation to the same extent that this state has jurisdiction over offenses committed elsewhere within this state, and the criminal and/or civil laws of this state shall have the same force and effect within such lands as they have elsewhere within this state."

4. Act of Aug. 13, 1954, 68 Stat. 718, 25 U.S.C. §§ 564–564x; Act of Aug. 27, 1954, 68 Stat. 868, 25 U.S.C. §§ 677–677aa; Act of Aug. 13, 1954, 68 Stat. 724, 25 U.S.C. §§ 691–708; Act of Aug. 23, 1954, 68 Stat. 768, 25 U.S.C. §§ 721–728; Act of Sept. 1, 1954, 68 Stat. 1099, 25 U.S.C. §§ 741–760; Act of Aug. 1, 1956, 70 Stat. 893, 25 U.S.C. §§ 791–807; Act of Aug. 2, 1956, 70 Stat. 937, 25 U.S.C. §§ 821–826; Act of Aug. 3, 1956, 70 Stat. 963, 25 U.S.C. §§ 841–853; Act of June 17, 1954, 68 Stat. 250, 25 U.S.C. §§ 891–902; Act of Sept. 5, 1962, 76 Stat. 429, 25 U.S.C. §§ 971–980.

These statutes specifically provided that upon the satisfaction of stipulated conditions, "all statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable to the members of the tribe, and the laws of the several States shall apply to the tribe and its members in the same manner as they apply to other citizens or persons within their jurisdiction." [5]

Obviously, therefore, Congress was aware of the difference between ceding jurisdiction to the states in terms of subject matter and territory and ceding such jurisdiction in terms of persons. When Congress provided for the latter it did so subject to a variety of specific conditions not present in Public Law 280. If Congress had intended by Public Law 280 to do both, as appellant suggests, the provision quoted and others like it would have been surplusage as to tribes to which Public Law 280 applied.[6]

On more than one occasion this court has described Public Law 280 in language that recognized that its scope was territorial. Anderson v. Gladden, 9 Cir., 293 F.2d 463, 466 (1961) ("In unambiguous terms, Public Law 280 withdrew federal jurisdiction over offenses committed in specified areas of Indian country by the grant of exclusive criminal jurisdiction therein to five designated states"); Williams v. United States, 9 Cir., 215 F.2d 1, 3 (1954) ("So far as presently concerns the Klamath and certain other reservations, it appears that Congress has since conferred upon the state courts jurisdiction over crimes committed thereon. 67 Stat. 588, 18 U. S.C. § 1162").

Finally, Congress recently repealed section 7 of Public Law 280 and substituted a provision making a number of additions, one of which is a provision that the state may assume "such measure[s] of jurisdiction over any or all of such offenses committed within such Indian country or any part thereof as may be determined by such State." Pub. L. No. 90–284, § 401(a), 82 Stat. 73. This addition, according to a communication from the Department of Interior to the chairman of the Committee on Interior and Insular Affairs, was "a change of form and not a change of substance, because the present law permits the States to assume partial jurisdiction either by geographic area or by subject matter. Some of the States have in fact done so. For example, Neveda has assumed jurisdiction over limited areas. Idaho has assumed jurisdiction over limited subject matter (compulsory schools, public assistance, domestic relations, mental illness, juvenile delinquency, dependent children). Washington has assumed jurisdiction over both limited areas and limited subject matter." Hearings before Subcommittee on Indian Affairs, House of Representatives, Friday, March 29, 1968, Serial No. 90–23 at 25. This construction cannot be reconciled with appellant's contention that the purpose and effect of the statute was to totally emancipate those tribes and individual Indians to which it is applicable.

Accordingly, we conclude that, as a matter of statutory construction, appellant, as an Indian, was triable in federal court for an offense committed against a non-Indian on the Fort Peck reservation.

2. Appellant contends that so construed the statute violates the Due Process Clause of the Fifth Amendment because it bases jurisdiction upon race. The purpose of these statutory provisions is to protect the Indian.[7] The

---

5. 25 U.S.C. §§ 564q, 677v, 703, 726, 757, 803, 823, 848, 899, 980.

6. Klamath Tribe (Ore.), 25 U.S.C. § 564q; certain tribes and bands of Indians in Western Oregon, 25 U.S.C. § 703; Menominee Tribe of Wisconsin, 25 U.S.C. § 896 (see Act Aug. 24, 1954, Pub.L. No. 662, 83d Cong., 2d Sess., 68 Stat.

795); and Ponca Tribe of Nebraska, 25 U.S.C. § 980.

7. United States v. Kagama, *supra*, 118 U.S. at 383–384, 68 S.Ct. 1109, 30 L.Ed. 228. *See also* United States v. Barnhart, 9 Cir., 22 F. 285, 289 (1885): "Local interference in such cases generally results in the punishment of the Indian and the acquit-

charge and the penalty are the same as they would be if appellant were a non-Indian. Only the court is different. Appellant has not suggested how this difference might have injured him. *See* Mull v. United States, 402 F.2d 571, 573 (9th Cir. 1968); Gray v. United States, 394 F.2d 96, 98 (9th Cir. 1968).

Affirmed.

tal of the white man * * * No white man was ever hung for killing an Indian, and no Indian tried for killing a white man ever escaped the gallows."