WILLIAM L. LAROQUE AND BELVA B. LAROQUE, PLAINTIFFS AND APPELLANTS, *v.* STATE OF MONTANA AND JOHN C. ALLEY ET AL., DEFENDANTS AND RESPONDENTS.

TONY BOXER, PLAINTIFF AND APPELLANT, *v.* THE STATE OF MONTANA AND JOHN C. ALLEY ET AL., DEFENDANTS AND RESPONDENTS.

Nos. 13993, 14048.
Submitted June 12, 1978.
Decided Aug. 23, 1978.
Rehearing Denied Oct. 5, 1978 in No. 13993.
583 P.2d 1059.

316

Russell A. LaVigne, Jr. (argued), Helena, for appellants.

Robert W. Corcoran, Helena, Deidre Boggs (argued), Missoula, for respondents.

Edward J. Shawaker (argued), Washington, D. C., amicus curiae.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

Since each of the captioned cases involves the same subject matter, we decided the same together. Both of the appeals involve an attempt by the State of Montana to collect state income taxes on income earned by Indians living on an Indian reservation and derived solely from reservation sources. The District Court, Fifteenth Judicial District, Roosevelt County, concluded in each case that the State had jurisdiction to impose and collect state income tax from both appellants. For the reasons set forth below we reverse.

The facts in these two causes were stipulated:

William LaRoque is an enrolled member of the Turtle Mountain Chippewa Tribe, North Dakota, and his wife, Belva, is an enrolled member of the Assiniboine-Sioux Tribes of the Fort Peck Reservation, Montana. They lived in the Fort Peck Reservation during the year 1968 and several years before. In 1968, LaRoque earned money within the exterior boundaries of the Fort Peck Reservation, for which he paid income tax to the State. In this action he seeks a refund of that tax for the money he earned as an Indian on an Indian reservation.

Tony Boxer is a Chippewa Indian, born in North Dakota in 1912. His father was a Chippewa from the Red Lake Reservation, Minnesota and his mother was a Chippewa from the Turtle Mountain Reservation, North Dakota. Since 1921, Boxer has lived on the Fort Peck Reservation. Boxer owns an undivided .016 interest in a tract of land held in trust by the United States on the Fort Peck Reservation and income from that land is paid into Boxer's Individ-

ual Indian Money Account by the Bureau of Indian Affairs. The record indicates Boxer is entitled to medical treatment from the Indian Public Health Service and has a work preference as an Indian in the Indian Manpower programs on the Fort Peck Reservation. Although it is stipulated Boxer is a Chippewa Indian, he has never been formally enrolled in any tribe.

During the years 1967 and 1968, Boxer earned income within the Fort Peck Reservation other than that derived from his trust land, and the State is seeking to tax that income. In his action, Boxer seeks to enjoin that collection because he is an Indian and the income was earned on an Indian reservation.

These cases were decided on a stipulated record as set out above, and on crossmotions for summary judgment. In each case the District Court held the State had jurisdiction to tax the Indian income in question, since each was not a member of the Assiniboine-Sioux Tribe. The Court also said the holding of *McClanahan v. Arizona Tax Commission* (1973), 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129, is not to be applied retroactively. Judgment, including findings of fact and conclusions of law, was entered in each case and these appeals followed.

The issue presented for review is the same: whether an Indian not an enrolled member of the tribe on whose reservation he is living, may be taxed by the State for income earned on that reservation? We are not asked to decide, nor do we decide, questions concerning jurisdiction of the State in any situation other than that presented here. Preliminary to discussing the issue presented, we must determine whether the decision in *McClanahan* may be applied here or whether it is barred by the rule of nonretroactivity. *McClanahan*, if it may be applied and is not barred by nonretroactivity, will control the disposition of these appeals.

Respondents have contended that, because of their reliance on state statutes, appellants' acquiescence in filing returns and the apparent applicability of the statutes to appellants, this Court should consider *McClanahan* to be nonretroactive in application. The United States Supreme Court in *Chevron Oil v. Huson*

(1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, enumerated the factors to be considered before adopting a rule of nonretroactive application. First, the decision to be applied nonretroactively must establish a new principle of law either by overruling established precedent on which litigants have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, the merits of each case must be weighed by looking to the history, purpose and effect of the rule in question and whether retroactive application will further or retard its operation. Finally, the inequity of retroactive application must be considered, for where substantial inequity will result by such application, a ruling of nonretroactivity is proper. *Chevron Oil*, 404 U.S. at 106, 107, 92 S.Ct. 349. Applying these factors to the case at hand, we find they do not prevent a retroactive application of *McClanahan v. Arizona Tax Commission*, supra.

■ First, as was made plain in *Hanover Shoe v. United Shoe Machinery Corp.* (1968), 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231, unless we are considering "a situation in which there was a clearly declared judicial doctrine upon which [litigant] relied and under which [litigant's] conduct was lawful, a doctrine which was overruled in favor of a new rule according to which conduct performed in reliance upon the old rule would have been unlawful. * * *" The argument of justifiable reliance will not prevent retroactive application of a new decision. *Hanover Shoe*, 392 U.S. at 496, 88 S.Ct. at 2233. Clearly, we do not have such a situation here. Prior to *McClanahan* there existed no "clearly declared judicial doctrine" regarding imposition of state income taxes on reservation Indians; in fact, *McClanahan* was a case of first impression on this point. *McClanahan*, 411 U.S. at 165, 93 S.Ct. 1257. Although this *was* a decision of first impression, the emergence of the principle enunciated in *McClanahan* had been foreshadowed by the general preemption analyses applied in Indian jurisdiction cases, 411 U.S. at 168, 93 S.Ct. 1257; *United States v. Mazurie* (1975), 419 U.S. 544, 554, 95 S.Ct. 710, 42 L.Ed.2d 706; *Morton v. Mancari* (1974), 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d

290; *Williams v. Lee* (1959), 358 U.S. 217, 220, 79 S.Ct. 269, 3 L.Ed.2d 251. Such pre-emption analysis had been applied to an on-reservation taxation question and resulted in a denial of state power to impose its tax in *Warren Trading Post v. Arizona Tax Commission* (1965), 380 U.S. 685, 691, 85 S.Ct. 1242, 14 L.Ed.2d 165. Therefore, though the State relied on apparent applicability of state tax statutes, it did so in the face of strong indications to the contrary. Furthermore, state action shortly after *McClanahan* was handed down indicated the State of Montana felt the decision was retroactive. See, *Moe v. Confederated Salish and Kootenai Tribes* (1976), 425 U.S. 463, 469, 96 S.Ct. 1634, 48 L.Ed.2d 96. Reliance in such a circumstance will not prevent retroactive application of a decision.

The second factor we must consider is whether the retroactive application of the rule of *McClanahan* in these appeals will retard or further the rule's operation. It seems apparent to this Court if the *McClanahan* decision *may* be applied to these cases, our determination as to whether it can *in fact* be applied will resolve much doubt as to just who is to benefit from the principle of that case. Retroactive application here can thus only further the operation of the rule in *McClanahan.*

■ Finally, we must consider what inequities may result from a retroactive application. It is important to note it is respondents who must convince this Court that retroactive application would result in substantial inequitable results. *Jimenez v. Weinberger* (7th Cir. 1975), 523 F.2d 689, 704. Respondents have not met this burden. Appellants admit the procedural requirements of the Montana statute governing refunds, section 84-4956, R.C.M.1947, will prohibit substantial refunds. Therefore, no substantial inequity will insure to respondents by retroactive application of the *Mc-Clanahan* decision.

We find the decision in *McClanahan* can be applied retroactively. Having decided application of *McClanahan* is not barred, we must now determine whether it *in fact* is applicable.

■ *McClanahan* held in attempting to impose a state income

tax on income earned by an on-reservation Indian derived solely from reservation sources, Arizona had "interfered with matters which the relevant treaty and statutes leave to the exclusive province of the Federal Government and the Indians themselves." The tax was therefore "unlawful as applied to reservation Indians with income derived wholly from reservation sources." *McClanahan*, 411 U.S. at 165, 93 S.Ct. at 1259. this holding derives from a general pre-emption analysis which gives effect to the plenary and exclusive power of the Federal government to deal with Indian tribes. *McClanahan*, 411 U.S. at 172, 93 S.Ct. 1257; *Mazurie*, 419 U.S. at 554, 95 S.Ct. 710; *Board of Commissioners v. Seber* (1943), 318 U.S. 705, 715, 716, 63 S.Ct. 920, 87 L.Ed. 1094. This pre-emption analysis draws support from the "policy of leaving Indians free from state jurisdiction and control [which] is deeply rooted in the Nation's history," *McClanahan* 411 U.S. at 168, 93 S.Ct. at 1260; and the extensive federal legislative and administrative regulation of Indian tribes and reservations. *McClanahan* 411 U.S. at 173-179, 93 S.Ct. 1257. "Congress has * * * acted consistently upon the assumption that the States have no power to regulate the affairs of Indians on a reservation," *Williams v. Lee*, supra, 358 U.S. at 220, 79 S.Ct. at 271 and therefore:

"* * * [S]tate laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that state laws shall apply. It follows that Indians and Indian property on an Indian reservation are not subject to state taxation except by virtue of express authority conferred upon the state by act of Congress." Cohen, *Handbook of Federal Indian Law* at 254.

The United States Supreme Court has agreed that pre-emption analysis is particularly persuasive in the special area of state taxation:

"[A]bsent cession of jurisdiction or other federal statutes permitting it, there has been no satisfactory authority for taxing Indian reservation lands or Indian income from activities carried on within the boundaries of the reservation, and [*McClanahan*] lays to rest any doubt in this respect by holding that such taxation is not per-

missible absent congressional consent." *Mescalero Apache Tribe v. Jones* (1973), 411 U.S., 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114.

We find from an examination of relevant statutes that such cession to Montana jurisdiction as to taxation has not occurred.

The Buck Act, 4 U.S.C. § 105 et seq., provides comprehensive guidance for state taxation of those persons living within federal areas. Section 106(a) of the Act gives to the state general authority to tax income of residents of federal areas but section 109 excepts "Indians not otherwise taxed" from this authority. The United States Supreme Court has interpreted this section and its legislative history as referring to reservation Indians earning their income on the reservation. *McClanahan*, 411 U.S. at 177, 93 S.Ct. 1257; *Warren Trading Post*, 380 U.S. at 691, 85 S.Ct. 1242. Congress has also provided a means by which states may assume jurisdiction over on-reservation Indians—Title 25 U.S.C. § 1322(a). Montana has not, however, undertaken this procedure with respect to the Fort Peck Reservation. There is no evidence in the treaty establishing the Fort Peck Reservation, 25 Stat. 113, or in Montana's Enabling Act, 25 Stat. 676, of any express cession of authority to the State to tax income of Indians residing on Indian reservations derived from reservation sources. We find there has been no express cession of jurisdiction by the federal government to the State to support its claimed taxation authority as required by *Mescalero*. The principal of *McClanahan* is thus controlling in these appeals unless the individual status of appellants removes them from its purview.

As our discussion above indicates state authority within the exterior boudaries of an Indian reservation is limited. See, *Fisher v. District Court* (1976), 424 U.S. 382, 389, 96 S.Ct. 943, 47 L.Ed.2d 106, 113; *Mescalero*, supra; *McClanahan*, supra; *State ex rel. Old Elk v. District Court of Bighorn County* (1976), 170 Mont. 208, 552 P.2d 1394, 1396; *Blackwolf v. District Court of Sixteenth Judicial District* (1972), 158 Mont. 523, 526 493 P.2d 1293, 1294; *Crow Tribe v. Deernose* (1971), 158 Mont. 25, 31, 487 P.2d 1133, 1136. However, Indian activities conducted outside the reservation present different considerations. "State authority over Indians is

yet more extensive over activities * * * not on any reservation."
*Organized Village of Kake v. Egan* (1962), 369 U.S. 60, 75, 82
S.Ct. 562, 571, 7 L.Ed.2d 573. Absent express federal authority to
the contrary, Indians outside reservation boundaries have general-
ly been held subject to nondiscriminatory state law otherwise ap-
plicable to all citizens of the state. *Mescalero*, 411 U.S. at 148, 93
S.Ct. 1267; and cases cited therein; Cohen, *Handbook of Federal
Indian Law* at 119. In a recent case this Court found the State had
subject matter jurisdiction primarily because the transaction invol-
ving the Indian had occurred off the reservation. *Little Horn State
Bank v. Stops* (1976), 170 Mont. 510, 555 P.2d 211, 213, 214, cert.
den., 431 U.S. 924, 97 S.Ct. 2198, 53 L.Ed.2d 238.

Respondents contends appellants' status as non-members of the
Fort Peck Reservation Assiniboine-Sioux Tribes denies them the
protection of *McClanahan.* We do not agree. As is clear from the
comparison above, between state jurisdiction on and off the reser-
vation, the primary factor in limiting state jurisdiction is whether
the activity occurred in "areas set aside by treaty for the exclusive
use and control of Indians." *McClanahan*, 411 U.S. at 176, 93
S.Ct. at 1264. For example, in *Warren Trading Post v. Arizona
Tax Commission*, supra, immunity from the State's taxing authori-
ty was granted to a non-Indian trader located within the exterior
boundaries of the Navajo reservation. (Although federal regulation
was an important factor in that decision, the decision cannot be re-
stricted on that basis. *McClanahan*, 411 U.S. at 170, 93 S.Ct.
1257.) In *Organized Village of Kake v. Egan*, supra, a recognized
community of Indians was held subject to state fishing regulations
for off-reservation fishing. Similarly, the tribal enterprise in
*Mescalero Apache Tribe v. Jones*, supra, though operated by an
organized tribe, was off reservation lands and thus subject to New
Mexico's gross receipts tax. The Ninth Circuit in *United States v.
Burland* (9th Cir. 1971), 441 F.2d 1199, 1203, cert. den. 404 U.S.
842, 92 S.Ct. 137, 30 L.Ed.2d 77, held an enrolled Flathead Indian
was subject to federal jurisdiction for an act committed on the Fort
Peck Reservation, even though his own reservation had ceded crim-
inal and civil jurisdiction to the State of Montana. *Burland* em-

phasized the cession was in geographical and subject matter terms rather than in terms of persons. 441 F.2d at 1202.

We therefore, conclude that *situs* of the activity is the primary factor in determining whether state taxation jurisdiction exists, not the *status* of the individual as enrolled or non-enrolled. We read the phrase "reservation Indian" in *McClanahan* to mean Indians residing on the reservation, and not just Indians who are enrolled members of the tribe. We find support for this conclusion in *Fox v. Bureau of Revenue* (1975), 87 N.M. 261, 531 P.2d 1234, cert. den. 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341. In *Fox*, the Court held a Comanche Indian who worked and resided on the Navajo reservation in New Mexico and who was not an enrolled member of the Navajo tribe, was nevertheless exempt from state income taxation. *Fox*, 531 P.2d at 1235. The Court indicated the important factors were the coalescence of situs (reservation) and status (Indian). *Fox* at 1234. The Court could find no cases where the status of the Indian in question as an enrolled tribal member was crucial; in fact, in the cases decided, tribal affiliation was unimportant as situs on a reservation and status as an Indian coalesced. *Burland*, 404 U.S. 842, 92 S.Ct. 137, 30 L.Ed.2d 77, indicated the status of the Indian as a non-enrolled member was of no importance where the act occurred on an Indian reservation that had not ceded criminal jurisdiction to the State and therefore federal jurisdiction was exclusive. The Court in *Arizona ex rel. Merrill v. Turtle* (9th Cir. 1969), 413 F.2d 683, 685, cert. den. (1970), 396 U.S. 1003, 90 S.Ct. 551, 24 L.Ed.2d 494, found the State of Arizona could not extradite a Cheyenne Indian who was a resident on the Navajo reservation because it would "clearly interfere with rights essential to the Navajo's self-government." The Navajo tribe had provided in its tribal laws for extradition procedures. The fact the Indian involved was not a member of the tribe was of no importance to the Court's conclusion that Arizona had no authority to exercise extradition jurisdiction over "Indian residents of the Navajo Reservation." *Merrill*, 413 F.2d at 686. What *was* important was the *situs* of the activity—residence on a reservation which had

enacted jurisdictional laws contrary to those of the state—and the *status* of the party involved as an Indian. See, White Eagle v. Dorgan (N.D.1973), 209 N.W.2d 621.

In the instant appeals we are faced with the same coalescence of situs and status that existed in the above cases and in *McClanahan.* Both appellants, LaRoque and Boxer, resided and earned the income which the State seeks to tax on the Fort Peck Reservation. Both appellants are Indians, a stipulated fact. Congress has not expressly ceded authority to Montana to tax income of on-reservation Indians nor has the State acted under available procedures to acquire such jurisdiction. Since both appellants are Indians residing on the reservation, and since each of their incomes were derived wholly from reservation sources, their activity is "totally within the sphere which the relevant treaty and statutes leave for the Federal Government and for the Indians themselves." *McClanahan*, 411 U.S. at 179, 180, 93 S.Ct. at 1266. Therefore, we hold the State was without authority to impose its income tax on these Indian residents of an Indian reservation.

Respondents have suggested we follow the decision of the Minnesota Tax Court of Appeals in *Topash v. Commissioner of Revenue*, No. 2054 (Minn.Tax App.Ct., Dec. 3, 1976). We decline to do so. The Court there offers us no compelling reason as to why we should accept its restrictive reading of *McClanahan*, and in the face of the authority discussed above concerning tribal affiliation in jurisdictional questions, a mere statement that if the United States Supreme Court had meant all Indians, it would have said so, is not persuasive.

Having found *McClanahan v. Arizona Tax Commission* is retroactive in application, that it does apply to these appeals and therefore the State was without authority to impose the taxes here in question, we now consider how this decision is to be implemented with respect to these appellants. We first make clear the interests of the State in an orderly tax collection procedure mandate an adherence to the State's procedure for refunds, Chapter 49, Title 84, 1947 Revised Codes of Montana. This is a procedural require-

ment only, and does not interfere in any way with appellants' substantive right to be free from state authority to tax. Therefore, if LaRoque's claim for refund is not barred by these procedures, it should be granted. Boxer, having never paid the tax, is not seeking a refund but rather is seeking to enjoin the state from collecting tax. Such an injunction should be granted. Plainly, to require Boxer to go through the refund procedure would subject him to state authority to collect the tax which we now hold invalid. The refund procedure implicitly presupposes the state can intrude on an Indian's rights by collecting the tax before the remedy is made available. Since Boxer lacks an adequate remedy at law, equitable injunctive relief is necessary. Dobbs, *Law of Remedies*, § 2.5. See, *Dillon v. State of Montana* (D.Mont.1978), 451 F.Supp. 168, 35 St.Rep. 637, 646.

Reversed and remanded with directions to amend the judgments entered by the District Court to conform to this opinion.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and HARRISON concur.