Laurel E. LYON, Gerald J. Mestas, Susie M. Mestas, Jose G. Martinez, Alberta L. Martinez, Michael D. Haneman, Patricia A. Haneman, George E. Zollinger, James T. Burton, and Esther M. Burton, Individually and on behalf of all others similarly situated, Plaintiffs–Appellants and Cross–Appellees,

v.

AMOCO PRODUCTION COMPANY, Arco Oil and Gas Company, Emerald Gas Operating Company, Fuel Resources Development Company, d/b/a FuelCo Inc., Meridian Oil Production, Inc., Northwest Pipeline Corporation, and Texaco Exploration and Production, Defendants–Appellees and Cross–Appellants.

No. 94CA1296.

Colorado Court of Appeals,
Div. V.

Feb. 22, 1996.

Rehearing Denied June 27, 1996.

Branch Law Firm, Turner W. Branch, Daniel R. Swiss, Albuquerque, New Mexico, Wittman & McCord, Edward M. McCord, Colorado Springs, for Plaintiffs–Appellants and Cross–Appellees.

Holland & Hart, Scott S. Barker, Perry L. Glantz, Denver, Amoco Corporation, Bradley S. McKim, Denver, for Defendant–Appellee and Cross–Appellant Amoco Production Company.

Dugan & Associates, Thomas P. Dugan, Durango, Gardere & Wynne, J. Randall Miller, Tulsa, Oklahoma, for Defendant–Appellee and Cross–Appellant Arco Oil and Gas Company.

Baker & Hostetler, Gregory S. Brown, Mark D. Flink, Michael J. Roche, Denver, for Defendant–Appellee and Cross–Appellant Emerald Gas Operating Company.

Lindquist, Vennum & Christensen, Shaun A. Christensen, Harold G. Morris, Jr., Denver, Lindquist & Vennum, P.L.L.P., David L. Sasseville, Richard M. Ihrig, William E. Flynn, Sarah D. Halvorson, Minneapolis, Minnesota, for Defendant–Appellee and Cross–Appellant Fuel Resources Development Company, d/b/a FuelCo, Inc.

Holme Roberts & Owen LLC, Marla J. Williams, Linnea Brown, Denver, Shand & Newbold, P.C., Michael Chapman, Durango, for Defendant–Appellee and Cross–Appellant Meridian Oil Production, Inc.

Northwest Pipeline Corporation, Teresa Silcox, Salt Lake City, Utah; Rodey, Dickason, Sloan, Akin & Robb, Rex D. Throckmorton, Mary P. Keleher, Charles K. Purcell, Albuquerque, New Mexico, for Defendant–Appellee and Cross–Appellant Northwest Pipeline Corporation.

Texaco Exploration & Production, Inc., A. Randall Farnsworth, Joel A. Hubscher, Denver, Duthie & Tate, Harry G. Tate, Paul W. Whistler, Durango, King & Spalding, George S. Branch, J. Kevin Buster, Sean R. Smith, Atlanta, Georgia, for Defendant–Appellee and Cross–Appellant Texaco Exploration and Production.

Maynes Bradford Shipps & Sheftel, Thomas H. Shipps, Durango, for Amicus Curiae Southern Ute Indian Tribe.

Opinion by Judge ROTHENBERG.

In this action premised on allegations that certain gas wells and drilling operations have caused air, water, and soil contamination, plaintiffs, consisting of affected surface land owners, appeal three orders entered by the trial court in favor of defendant oil companies. In the first order the court granted the joint motion to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1) filed by defendants Texaco Exploration and Production Inc. and ARCO Oil and Gas Company. In the second, the trial court granted separate motions to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1) of Emerald Gas Operating Co. and Amoco Production Company. And, in the third, the trial court granted the joint motion of all defendants to dismiss, pursuant to C.R.C.P. 12(b)(6), for failure to join an indispensable party under C.R.C.P. 19. All defendants cross-appeal that portion of the trial court's order denying their requests for reasonable attorney fees. We affirm the dismissal of all claims against defendants, reverse the order denying attorney fees, and remand with directions.

## I.

### The Parties

All plaintiffs but one own surface land located in the San Juan Basin of Southwestern Colorado and within the boundaries of the Southern Ute Indian Reservation (Reservation). The one remaining plaintiff owns surface land in the San Juan Basin but outside the boundaries of the Reservation. Plaintiffs are non-Indians and reside on non-Indian fee land.

Defendants are seven oil and gas companies that operate producing gas wells within the San Juan Basin. For the purpose of analyzing jurisdiction we categorize defendants into two separate groups. The first consists of defendants Texaco Exploration and Production, Inc. and ARCO Oil and Gas Company (Texaco/ARCO). The record shows that all of the gas wells operated by these two defendants within the San Juan Basin are located within the boundaries of the Reservation and produce gas from Southern Ute Indian trust lands under tribal mineral leases. The second group consists of all other defendants who do not operate their gas wells solely within the Reservation under tribal mineral leases.

Although not a party to the lawsuit, the Southern Ute Indian Tribe (Tribe) plays an essential role in this litigation. The Tribe acts as lessor of numerous mineral leases to defendants and has filed an Amicus Curiae brief in this appeal urging affirmance of the trial court's orders regarding the jurisdictional issues.

The Reservation consists of surface land held in trust for the Tribe, land allotted to members of the Tribe, and land held in fee simple by non–Tribe members and non–Indians. Mineral rights throughout the Reservation are similarly allocated. In *Southern Ute Indian Tribe v. Amoco Production Co.*, 863 F.Supp. 1389, 1398 (D.Colo.1994), the Reservation was described as:

a checkerboard of different types of ownership interests including tribal lands held in trust by the United States for the benefit of the Tribe, lands held by the Tribe in its own name, individual Indian land allot-

ments subject to federal trust restrictions, land owned in fee simple by individual Indians, and lands held in fee simple by non-Indians.

The Reservation also consists of National Forest land, but that fact is irrelevant for the purposes of this appeal.

## II.

### Procedural Background

In May 1993, plaintiffs filed this action seeking class certification and alleging, *inter alia*, that defendants' gas wells and drilling operations have contaminated and continue to contaminate the water sources, air, and soil of the plaintiffs' properties and of the Colorado portion of the San Juan Basin. Plaintiffs seek monetary damages sufficient to compensate them for their losses and to pay for remediation of the damaged land. Additionally, plaintiffs request injunctive relief based on tort theories including nuisance and trespass.

There is no indication in the record that the trial court certified the class pursuant to C.R.C.P. 23. Numerous motions and amended complaints followed the original filing. However, only the third amended complaint and the motions to dismiss described above are relevant to this appeal.

## III.

### Subject Matter Jurisdiction

Plaintiffs first contend that the trial court erred in granting defendants' motions to dismiss for lack of jurisdiction.

■ Lack of subject matter jurisdiction motions are governed by C.R.C.P. 12(b)(1) and evidentiary matters considered by the trial court relating to a motion pursuant to that rule are reviewed on appeal using the clearly erroneous standard of review. Under that standard, the plaintiff has the burden to prove jurisdiction and the standard of appellate review is highly deferential. *Trinity Broadcasting v. Westminster*, 848 P.2d 916 (Colo.1993). Evidentiary findings of the trial court are thus binding unless so clearly erroneous as not to find support in the record.

*M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380 (Colo.1994).

## A.

### Indian Land and Public Law 98–290

In the absence of controlling federal law, such as a specific treaty provision or a federal statute, tribal courts presumptively have jurisdiction over disputes involving Indians and non-Indians in the territory known as "Indian country." This includes all land within the limits of any Indian reservation under the jurisdiction of the United States government. Section 18 U.S.C. § 1151(a) (1948) ("Indian country" for federal criminal law purposes includes *all* lands within the exterior boundaries of an Indian reservation regardless of ownership status of the land). *See Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1541 (10th Cir. 1995) (In extending definition to the analysis of tribal civil jurisdiction, court stated that "§ 1151 represents an express Congressional delegation of civil authority over Indian country to the tribes"); *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). *See* Pommersheim, *The Crucible of Sovereignty: Analyzing Issues of Tribal Jurisdiction*, 31 Ariz. L.Rev. 330 (1989).

One such federal statute limiting tribal authority over the activities of non-Indians on reservation lands is Public Law 98–290, 98 Stat. 201, which was enacted in 1984 "to resolve uncertainty over the boundaries of the Southern Ute Indian Reservation and the status of unrestricted land on such reservation ..." 25 U.S.C. § 668. Recognizing that certain land within the reservation is owned in fee simple by non-Indians, the statute specifically addresses and limits the Tribe's jurisdiction over such non-Indians on their fee lands.

Specifically, Public Law 98–290 limits the Tribe's territorial jurisdiction over non-Indians to Indian trust lands, rather than all land within the Reservation. It provides that:

(a) Such territorial *jurisdiction* as the Southern Ute Indian Tribe has *over persons other than Indians and the property*

*of such persons shall be limited to Indian trust lands within the reservation.*

(b) Any person who is not an Indian and the property of any such person shall be subject to the jurisdiction of the United States under section 1152 of title 18, United States Code, only on Indian trust land.

Public Law 98–290, 98 Stat. 202, § 4, 25 U.S.C. § 668, § 2 (emphasis added).

"Indian trust land" means any land within the Reservation held by the United States in trust for the Tribe or individual Indians. Public Law 98–290, 98 Stat. 201, § 2. Trust land consists of surface and subsurface ownership. *See United States v. Shoshone Tribe,* 304 U.S. 111, 58 S.Ct. 794, 82 L.Ed. 1213 (1938) (Indian lands includes mineral resources).

### B.

### *Montana v. United States*

The leading contemporary case involving the extent of tribal jurisdiction over non-Indians and their property is *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). There, the Supreme Court held that tribes do *not* have legislative and regulatory jurisdiction over non-Indians on fee lands within the reservations. However, the Court also stated that:

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members through commercial dealing, contracts, leases, or other arrangements.... A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana v. United States, supra,* 450 U.S. at 565–66, 101 S.Ct. at 1258, 67 L.Ed.2d at 510–11.

In summary, in cases addressing the activities of non-Indians on Reservation land owned in fee simple by non-Indians, the usual presumption in favor of tribal jurisdiction is reversed. Public Law 98–290. In such cases, state jurisdiction is presumed to apply, absent certain exceptions. The Tribe still may exercise jurisdiction: (1) over the activities of non-Indians who enter consensual relationships with it through commercial dealing such as mineral leases; and (2) if the threatened conduct of the non-Indians directly affects the political integrity, economic security, or health and welfare of the Tribe. *Montana v. United States, supra; Superior Oil Co. v. United States,* 605 F.Supp. 674 (D.Utah 1985).

### C.

### *Texaco/ARCO*

Based on affidavits and other written materials submitted in support of the two defendants' motions to dismiss, the trial court found, *inter alia,* that: (1) all of the activities by Texaco/ARCO claimed to be negligent and dangerous occurred on tribal lands; (2) Texaco's and ARCO's wells all produce minerals within the reservation under Indian mineral leases; (3) 86 percent of Texaco and 92 percent of ARCO wells are located on tribal surface land; (4) 92 percent of the Southern Ute Indian Tribe's income is derived from oil and gas operations within the reservation and most of it comes from the defendants' gas wells on tribal lands; (5) the injunction sought by plaintiffs, if obtained, would have a serious impact on the Tribe and cause significant economic injury; (6) to allow the exercise of state jurisdiction in this case would undermine the authority of the tribal courts over reservation affairs; (7) the Tribe and federal government already . regulate all phases of gas well production on tribal lands; and (8) requirements of control, monitoring, and the like to meet the plaintiffs' claims in state court could give rise to conflicts of authority and enforcement problems.

The trial court concluded that:

> [T]his court should be barred from exercising jurisdiction ... because the activities of these defendants occur on tribal lands;

there are 'consensual relationships' between non-Indians and the Tribe (mineral leases); and the health, welfare, economic security, and sovereignty of the Tribe is seriously threatened if the plaintiffs obtain the requested relief.

As to Texaco and ARCO, the trial court properly considered Public Law 98–290 which confirms tribal court jurisdiction over the activity of non-Indians on Indian trust land, including the tribal mineral estates where the challenged activity occurred. The court also considered relevant case law and made findings in accordance with *Montana v. United States, supra.* Those findings of fact have record support and we are bound by them.

Plaintiffs acknowledge the controlling authority of Public Law 98–290 and *Montana v. United States, supra.* Nevertheless, they assert that Colorado state courts, rather than the Tribal court or federal court, have jurisdiction here because the damages have affected non-Indian, Colorado citizens on non-Indian lands and were caused by non-Indians. According to plaintiffs, it is the place where the damages occurred that controls jurisdiction, rather than the situs of the alleged tortious activities. We are not persuaded.

Plaintiffs rely on *McAvoy v. District Court,* 757 P.2d 633 (Colo.1988) which held that tort actions arise where the injury occurs. However, because it involved the interpretation of long-arm statutes as applied to an automobile accident and did not involve Indian law or federal questions, we conclude it is inapposite in this jurisdictional dispute. Indian law issues are unique and the decisions resolving them often have turned upon unusual statutes and special canons of construction.

In *LaRoque v. State,* 178 Mont. 315, 583 P.2d 1059 (1978), the Montana Supreme Court held that, when tribal and state civil jurisdiction are at issue, the situs of the activities is the primary factor:

> [T]he primary factor in limiting state jurisdiction is whether the activity occurred in areas set aside by treaty for the exclusive use and control of Indians.

We acknowledge that *LaRoque* was a tax case in which the court determined that income earned by an Indian from on-reservation activities was not subject to state taxation, and that it did not involve non-Indians. Nevertheless, we agree with the trial court that an analysis based upon the situs of the activities is consistent with the policy that federal statutes are to be construed liberally in favor of the Indians with ambiguous provisions interpreted to their benefit. *County of Yakima v. Yakima Indian Nation,* 502 U.S. 251, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992).

■ Using that analysis, here, the relevant activity is defendants' drilling of wells and production of natural gas. And, since defendants are non-Indians, the salient question is whether the activity occurred on Indian trust lands within the Reservation. *See* Public Law 98–290. The trial court found that it did. In the alternative, another important question is whether the conduct of the non-Indians on fee lands within the Reservation threatens or has some direct effect on the political integrity, economic security, or health and welfare of the Tribe. *Montana v. United States, supra.* Again, the court specifically found that it did.

Therefore, we hold the trial court did not err in concluding that state courts lack jurisdiction over plaintiffs' claims against defendants Texaco and ARCO, and that the Tribe has exclusive jurisdiction over such claims.

Given this conclusion that the court lacked jurisdiction over the subject matter of this action as it involved these two defendants, we need not address plaintiffs' additional contentions regarding defendants Texaco and ARCO.

### D.

### *Emerald and Amoco*

Plaintiffs also contend that the trial court erred in granting the motion to dismiss for lack of jurisdiction filed by defendants Emerald and Amoco. Although a different analysis applies to these defendants since they operate under tribal and non-tribal leases, and on Indian trust land and non-trust land, we nevertheless conclude that any error rela-

tive to granting this motion does not require reversal.

■ As discussed earlier, the Tribe and the United States have jurisdiction over the activities of non-Indian defendants on Indian trust land. And, to the extent the trial court's ruling is limited to these defendants' on-Reservation on-trust land activities, we conclude that it is correct. Public Law 98–290. However, the Tribe has no jurisdiction over a non-Indian defendant's activities on non-trust land in Colorado, unless the special circumstances discussed in *Montana v. United States, supra,* apply.

Since the trial court made no such findings of special circumstances as to defendants Emerald and Amoco, insofar as the ruling involves defendants' activities on non-trust land, it is clearly erroneous.

Here, the trial court's order regarding these two defendants is brief and we are unable to discern its scope. However, because we are affirming on other grounds, *see infra,* we need not remand for additional findings.

### IV.

#### *Indispensable Party*

Plaintiffs next contend that the trial court erred in concluding the Tribe is an indispensable party under C.R.C.P. 19 and in dismissing all defendants on that basis. Under these circumstances, we disagree.

#### A.

As a threshold matter, we address and reject plaintiffs' contention that the appropriate standard of appellate review for decision under C.R.C.P. 19 is *de novo* review.

The weight of authority supports the proposition that decisions under C.R.C.P. 19 and the federal rule, which is similar, are subject to review for an abuse of discretion. *See Shermoen v. United States,* 982 F.2d 1312 (9th Cir.1992); *McVay v. Western Plains Service Corp.,* 823 F.2d 1395, 1401 (10th Cir. 1987); *Pulitzer–Polster v. Pulitzer,* 784 F.2d 1305 (5th Cir.1986). *See also Jacobucci v. District Court,* 189 Colo. 380, 541 P.2d 667 (1975) (those persons falling within provisions of C.R.C.P. 19(a) should be joined if feasible). We apply that standard.

#### B.

C.R.C.P. 19(a) provides that a person who is properly subject to service of process in the action shall be joined as a party: (1) if complete relief among the other parties cannot otherwise be granted; or (2) if such person claims an interest in the subject of the action and nonjoinder would prejudice the non-joined party's ability to protect its interest or would subject another party to multiple or inconsistent obligations.

If a person falling within C.R.C.P. 19(a) cannot be made a party, then the court must determine whether in the interest of justice, the action should proceed or should be dismissed, the absent party being thus regarded as indispensable. C.R.C.P. 19(b).

Some of the defendants' wells are not on tribal trust land, and therefore, we would ordinarily not expect interference with or even a cessation of activities on such wells to affect the Tribe. This, however, is not the situation here.

In their third amended complaint, plaintiffs alleged that *all* of defendants' gas drilling and production in the northern San Juan Basin had contributed to basin-wide contamination to *all* lands. This amended complaint is in contrast to plaintiffs' earlier complaints which had linked alleged contamination to specific wells.

Thus, plaintiffs now have alleged a seamless web of contamination which makes it difficult, if not impossible, to separate the wells and drilling operations outside the tribal trust land from those on tribal land.

■ Under these circumstances, therefore, we agree there is record support for the trial court's finding that all of plaintiffs' claims affect the tribal mineral leases, that the Tribe is a necessary party, that plaintiffs' request for an injunction, if granted, would significantly impact production and in turn would directly affect the Tribe's right to receive money under the leases, and that a judgment by the trial court without the Tribe

joined as a party would prejudice the Tribe's interests in its oil and gas leases.

Since all of these findings have record support, we are bound by them. We thus conclude that the requirements of C.R.C.P. 19(a) were met.

### C.

The second question is whether the Tribe is an indispensable party within the meaning of C.R.C.P. 19(b). The factors that must be considered are: (1) to what extent a judgment rendered in the non-joined person's absence might be prejudicial to such person or to those already parties; (2) whether the prejudice can be lessened by a shaping of the relief granted; (3) whether a judgment rendered in the non-joined person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed.

Here, the trial court found that the prejudice to the Tribe would be extensive, that injunctive relief could not properly be shaped to avoid prejudice, that limiting the plaintiffs' remedy to monetary damages may result in an inadequate judgment, and that plaintiffs have an adequate remedy in either tribal or federal court.

Again, given the circumstances at issue, we find no abuse of discretion in this ruling. *See Yazzie v. Morton,* 59 F.R.D. 377 (D.Ariz. 1973) (Navajo Tribe held to be an indispensable party under similar circumstances).

■ Indian tribes are sovereigns and generally exempt from suit. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Accordingly, the trial court did not abuse its discretion in determining that, although the Tribe is a necessary and indispensable party, it may not be involuntarily joined in this action. Hence, the court did not abuse its discretion in dismissing the action on that basis as to all defendants. *See* C.R.C.P. 19(b).

### V.

#### Attorney Fees

In their cross-appeals, defendants contend that the trial court erred in denying them reasonable attorney fees under § 13–17–201, C.R.S. (1987 Repl.Vol. 6A). We agree.

That statute states:

*In all actions brought as a result of death or an injury to person or property occasioned by the tort* of any person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant *shall* have judgment for his reasonable attorney fees in defending the action. This section shall not apply if a motion under rule 12(b) of the Colorado rules of civil procedure is treated as a motion for summary judgment and disposed of as provided in rule 56 of the Colorado rules of civil procedure. (emphasis added)

Plaintiffs do not dispute the fact that their claims were brought as a result of injury occasioned by the defendants' alleged torts, or that defendants' motions were filed pursuant to C.R.C.P. 12(b).

Rather, relying on *Willer v. City of Thornton,* 817 P.2d 514 (Colo.1991), plaintiffs argue that the use of factual materials by the parties, along with the resolution of both factual and legal issues by the court, indicates that the C.R.C.P. 12(b) motions were treated as motions for summary judgment. We are not persuaded.

In *Willer v. City of Thornton, supra,* the court expressly noted that the City had moved to dismiss pursuant to C.R.C.P. 12(b)(5). This is important because C.R.C.P. 12(b) states:

If, on a motion asserting the defense numbered (5) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....

Thus, while motions under C.R.C.P. 12(b)(5) may be treated as C.R.C.P. 56 motions, the rule does not mention that any other C.R.C.P. 12(b) motions may be so treated. Although decided in the context of the federal rules, *Boyle v. Governor's Veter-*

*ans Outreach & Assistance Center*, 925 F.2d 71, 74 (3d Cir.1991) points out the differences in the two provisions of the rule, as follows:

> Under 12(b)(1), the court is 'free to weigh the evidence and satisfy itself as to the existence of its power to hear the case'.... In contrast, because a [motion to dismiss for failure to state a claim upon which relief can be granted under C.R.C.P. 12(b)(5) ] ... 'results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn.'

This language was quoted with approval in *Trinity Broadcasting v. Westminster, supra*.

Of the six types of C.R.C.P. 12(b) motions, failure to state a claim upon which relief can be granted is the only one that results in a determination on the merits. Thus, the language of C.R.C.P. 12(b) itself and the reasoning of *Trinity Broadcasting* compel the conclusion that only C.R.C.P. 12(b)(5) motions may be treated as motions for summary judgment.

 Here, we hold that the dismissal of the claims against defendants Texaco and ARCO was pursuant to C.R.C.P. 12(b)(1) and that the dismissal of the claims against the remaining defendants was pursuant to C.R.C.P. 12(b)(6). Contrary to plaintiffs' contention, dismissal was not pursuant to C.R.C.P. 56.

We recognize that the result may seem harsh in certain instances. However, the statutory language is mandatory and leaves this court with no discretion. *See Houdek v. Mobil Oil Corp.*, 879 P.2d 417 (Colo.App. 1994) (statute is mandatory). Accordingly, reasonable attorney fees must be awarded to defendants and remand for a determination of the appropriate amount is necessary.

In determining such amount, the court also should consider any duplication of work that may have been performed since the briefs reflect that actions have been filed both in state and federal court. *See Houdek v. Mobil Oil Corp., supra*.

In summary, the trial court's orders granting Texaco and ARCO's joint motion to dis-miss pursuant to C.R.C.P. 12(b)(1) is affirmed and the remaining defendants' joint motion to dismiss pursuant to C.R.C.P. 12(b)(6) is also affirmed. The trial court's order denying reasonable attorney fees requested by all defendants pursuant to § 13–17–201 is reversed, and the cause is remanded to the trial court for determination of the appropriate amount of attorney fees.

STERNBERG, C.J., and CASEBOLT, J., concur.