Dewitt DILLON et al., Plaintiffs,
Appellees, Cross–Appellants,

v.

The STATE of MONTANA et al.,
Defendants, Appellants,
Cross–Appellees.

Nos. 78–3422, 78–3495.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 15, 1980.

Decided Dec. 23, 1980.

Thomas J. Lynaugh, Lynaugh, Fitzgerald, Schoppert, Skaggs & Essman, Billings, Mont., for Dillon.

Susan Stratman, Missoula, Mont., on brief; Deirdre Boggs, Sp. Asst. Atty. Gen., Missoula, Mont., for State of Mont.

Before ANDERSON and POOLE, Circuit Judges, and WOLLENBERG,* District Judge.

* The Honorable Albert C. Wollenberg, Senior United States District Judge for the Northern District of California, sitting by designation.

POOLE, Circuit Judge:

The State of Montana appeals a district court judgment which declared American Indians (Indians) residing on the federally recognized Crow Indian Reservation (Reservation) exempt from Montana's personal income tax, enjoined collection, and ordered refunds of taxes paid. The court denied exemption status to those Indians whose incomes were earned on the Reservation but who resided elsewhere and they cross appeal.[1] Montana argues that the Tax Injunction Act, 28 U.S.C. § 1341, denies federal jurisdiction over the Indians' complaint. We agree and accordingly reverse.

## I.

The Indians filed this suit in 1973 under 42 U.S.C. § 1983, claiming that the state could not constitutionally tax their income earned on the Reservation. Their complaint sought an injunction prohibiting collection of the state income tax, refund of taxes paid over the last five years, and contained class allegations. Federal subject matter jurisdiction was alleged pursuant to 28 U.S.C. § 1343(3). On June 6, 1976, the district court found that it had jurisdiction.[2]

The court certified the case as a class action with six subclasses. Three of the subclasses included Indians all of whom reside off but earn income on the Reservation. These were grouped by ethnic and tribal characteristics: (1) enrolled Crow, (2) enrolled members of other federally recognized tribes and (3) Indians not enrolled in any tribe. The remaining three subclasses included Indians who reside and earn income on the Reservation and were similarly grouped by ethnic and tribal characteristics.

On cross motions for summary judgment, the district court held that the three subclasses of Indians residing and earning income on the Reservation were exempt from

the state income tax while the remaining subclasses residing off the Reservation were subject to the tax. Injunctive, declaratory and refund relief was ordered.

Montana acquiesced in the grant of a tax exemption to Indians in the first subclass— enrolled Crow residing and earning income on the Reservation and has not appealed that portion of the district court's judgment. The grant of tax exemption to the remaining Reservation resident subclasses and the denial of exemption to the nonresident subclasses is before us by virtue of timely notices of appeal and cross appeal by Montana and the Indians.

The Tax Injunction Act, 28 U.S.C. § 1341, denies federal court jurisdiction to entertain a suit seeking relief from state taxation so long as the state provides a "plain, speedy and efficient remedy" to an aggrieved taxpayer in state courts. As Montana provides such a remedy for challengers of the state income tax, we hold that § 1341 precluded the district court from entertaining this case.

## II.

Analysis begins with examination of § 1341. That statute provides:

The district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under the State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341.

The scope of the jurisdictional bar of § 1341 is broader than its terms immediately indicate. It clearly bars injunctive relief. Decisions of this circuit apply it to suits seeking federal declaratory relief from state taxation. *Housing Authority of City of Seattle v. State of Washington*, 629 F.2d

---

1. The facts and opinion of the district court are reported at 451 F.Supp. 168 (D.Mont.1978).

2. The district court's summary order cited *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976); *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), and *McClana-*

*han v. Arizona State Tax Commission*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). The impact of *Moe* on the district court's jurisdiction is discussed in the text. Neither *Bryan* nor *McClanahan* are relevant to the federal jurisdictional question, however, as each arose in state court.

1307 (9th Cir. 1980); *Mandel v. Hutchinson*, 494 F.2d 364, 366 (9th Cir. 1974). In so holding, this court has recognized that any effort to obtain tax exemption or adjustment in federal court interferes with the fiscal operations of the state. *Mandel, supra*, 494 F.2d at 365–66 & n.1. Section 1341 embodies a strong federal policy of noninterference with state taxation and tax administration. *Id.* at 366. As a suit for a tax refund inevitably requires a court to interpret state taxing statutes and analyze the ambit of state taxing power, we held in *Kelly v. Springett*, 527 F.2d 1090 (9th Cir. 1975), that § 1341 jurisdictionally barred a 42 U.S.C. § 1983 suit in federal court which sought a refund of state taxes. *Id.* at 1093–94.

In this case, also a § 1983 action, the district court enjoined collection of the Montana income tax, declared Indians exempt from payment and ordered the State to make refunds. Our prior decisions, outlined above, indicate that each of these forms of relief implicate § 1341.

The Indians do not dispute the state of the law in this circuit as to injunctive and declaratory relief.[3] Rather, they argue that to the extent our decision in *Kelly* held refund suits barred by § 1341, that holding must be reconsidered in light of *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). They point to a single sentence in note 14 of the Supreme Court's opinion, which concluded with these words: "Any further proceedings with respect to refund claims by or on behalf of individual Indians . . ., would not appear to implicate § 1341." *Id.* at 475, n. 14, 96 S.Ct. at 1642. Upon careful examination, we are confident that the Court did not intend by this language to overrule the view of this and other circuits that § 1341 withdraws federal jurisdiction over suits for state tax refunds when adequate state remedies exist.

The *Moe* comment must be viewed in context. The Supreme Court had before it consolidated appeals from a Montana three–judge district court involving that state's power to impose cigarette sales and various personal property taxes on reservation Indians. Joined as plaintiffs in each appeal were an Indian tribe and class representatives of individual tribal members. Only in the personal property tax case did the complaint include a prayer for refund of taxes paid. The district court found jurisdiction over both tribe and individual plaintiffs. Its only mention of § 1341 with respect to the individual plaintiffs was a sentence in each district court opinion to the effect that jurisdiction was not defeated by that section. *See Confederated Salish & Kootenai Tribes v. Moe*, 392 F.Supp. 1297, 1305 (D.Mont.1974) (per curiam), *aff'd*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *Confederated Salish & Kootenai Tribes v. State of Montana*, 392 F.Supp. 1325, 1327 (D.Mont.1975) (per curiam), *aff'd*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) (the personal property tax case).

On appeal, the Supreme Court held that the tribe was not barred by § 1341 and therefore the district court had had jurisdiction. 425 U.S. at 474–75, 96 S.Ct. at 1641–1642. The Court then concluded "all of the substantive issues raised on appeal can be reached by deciding the claims of the Tribe alone . . . ." *Id.* at 475 n.14, 96 S.Ct. at 1642. Accordingly, the Court did not review the district court's finding of jurisdiction over the individuals as it was unnecessary to do so to resolve the substantive merits. *Id.* It is particularly noteworthy that the individual refund claims had not been adjudicated in the district court when the Supreme Court acted in *Moe*. None of the issues which might arise from those actions was before the Court. Indeed, the opinion reminded the district court that the remaining refund actions "must be properly grounded jurisdictionally." 425 U.S. at 469 n.7, 96 S.Ct. at 1639 n.7.

The Supreme Court was not called upon to consider, and did not consider, the interaction of § 1341 and state tax refund suits initiated in federal court. The justification

---

**3.** The Indians do not dispute that suits brought under 42 U.S.C. § 1983 are subject to the proscription of § 1341. *See Kelly v. Springett*, 527 F.2d 1090 (9th Cir. 1975).

for jurisdiction over the tribe did not turn on the relief sought by the tribe. Accordingly, the import of the Court's comment in note 14 ought not be unduly magnified. It was relegated to a footnote designed to reserve a question the Court expressly found it unnecessary to reach. To read one sentence of such dictum as a sweeping reappraisal by the Court of the law of § 1341 as interpreted in the lower federal courts is an invitation which we decline to accept. As that Court has admonished, "this Court does not decide important questions of law by cursory dicta inserted in unrelated cases. Whatever the dictum's meaning, we do not regard it as decisive . . . ." *See, e. g., Permian Basin Area Rate Cases*, 390 U.S. 747, 775, 88 S.Ct. 1344, 1364, 20 L.Ed.2d 312 (1968). Nor do we. We adhere to our holding in *Kelly v. Springett, supra*, 527 F.2d at 1090.

By enacting § 1341 in 1937, "Congress gave explicit sanction to the pre–existing federal equity practice" to refrain from adjudicating challenges to the legality or constitutionality of a State tax in federal court when a plain, adequate and complete remedy in a state forum was available. *Moe, supra*, 425 U.S. at 470, 96 S.Ct. at 1640. That practice had its roots in federalism, in the federal government's "scrupulous regard for the rightful independence of state governments" [*Matthews v. Rodgers*, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932)] "and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1975). This equitable bar to jurisdiction was invoked in refund proceedings. *See First National Bank v. Board of County Commissioners*, 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1929). The rule codified in § 1341 "is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems." *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 326 (5th Cir. 1979).

The "broad jurisdictional impediment" of § 1341 must be applied to tax refund suits if the concerns of Congress are to be meaningfully effectuated. Were it otherwise, the artful pleader in much state tax litigation could evade § 1341 by praying only for a tax refund. It is unpersuasive to suggest that refund litigation in federal court is any less an "interference with a state's internal economy" [*Moe, supra*, 425 U.S. at 470, 96 S.Ct. at 1640] than are injunctive or declaratory proceedings. A suit for a state tax refund would invariably require a federal court to interpret and apply state tax laws. Often, as in this case, these will be laws the state has not yet construed and a federal judge would be left in the always awkward position of deciding for the state what its tax laws are designed to accomplish. Such an interpretation of state law could promote confusion and uncertainty in an area of the state's vital concern.

The practical effect on state fiscal operations of a federal court's refund order differs little from the effect of the declaratory or injunctive relief a federal court is clearly forbidden by § 1341 to provide. If the sum to be refunded is large, the effect is obvious. Even if modest, the role of stare decisis in our judicial system means, at least, that the continued ability of the state to tax other taxpayers similarly situated will be drawn into serious doubt.

█ The balance Congress struck in § 1341 reflects great solicitude for the interests of the state in orderly administration and collection of revenue. Congress concluded that these interests were of such import that so long as state courts are available to hear challenges to state taxes, federal district courts would be unavailable for that purpose. We discern no significant distinction between the intrusiveness of federal injunctive and declaratory proceedings undoubtedly forbidden by § 1341 and that of a tax refund proceeding in federal court. Accordingly, as has every circuit court with whose rulings we are familiar, we continue to hold that § 1341 bars refund actions in federal court when adequate state remedies are available. *See United Gas Pipe Line Co. v. Whitman, supra*, 595 F.2d at 323; *Kelly v. Springett, supra*, 527 F.2d at 1090; *Bland v. McHann*, 463 F.2d 21

(5th Cir. 1972), *cert. denied*, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973); *Gray v. Morgan*, 371 F.2d 172, 175 (7th Cir. 1966); *Evangelical Catholic Communion, Inc. v. Thomas*, 373 F.Supp. 1342, 1344 (D.Vt.1973), *aff'd mem*, 493 F.2d 1397 (2d Cir. 1974); *cf. Ludwin v. City of Cambridge*, 592 F.2d 606, 610 n.1 (1st Cir. 1979) (federal courts should refrain generally from interpreting the correctness of state tax assessments).[4]

### III.

■ Section 1341 bars federal relief from state tax collection where the state provides a "plain, speedy and efficient" remedy. 28 U.S.C. § 1341. The district court's opinion in this case came before the Montana Supreme Court had ruled that an injunction would properly issue to restrain the state from attempting to collect income taxes from reservation Indians over whom the state lacked taxing power. *LaRoque v. State*, Mont., 583 P.2d 1059 (1978). *LaRoque* further indicates that an Indian need not pay a disputed tax assessment as a condition for obtaining review in state court of the legality of the tax. *Id.* We therefore have the benefit of a recent, definitive state court ruling which was not available to the trial court.

The Montana review of taxation, as now declared and approved in *LaRoque*, is "plain, speedy and efficient" within the meaning of § 1341. *See Tully v. Griffin, Inc., supra*, 429 U.S. at 75, 97 S.Ct. at 223 (Supreme Court approved New York tax adjustment remedy of declaratory suit during pendency of which tax assessment of the state need not be accepted by taxpayer); *Ludwin v. City of Cambridge, supra*, 592 F.2d at 609 (similar Massachusetts rem-

edy deemed adequate for § 1341 purposes); *Garrett v. Bamford*, 582 F.2d 810 (3rd Cir. 1978) (Pennsylvania equitable remedy, created after plaintiff filed suit, adequate for purposes of § 1341 and properly applied to plaintiff). Montana in fact affords substantially identical relief to that a litigant could hope to obtain in a federal district court. It would be anomalous indeed to declare a state tax adjustment remedy inadequate and on that basis permit a plaintiff to proceed in a federal court seeking identical relief. *See Mandel v. Hutchinson, supra*, 494 F.2d at 367 (state remedy need not be best available or even equal to that available in federal court to be adequate for purposes of § 1341).

Appellants argue that when they filed suit the injunctive remedy sanctioned in *LaRoque* had not been established as a reasonably certain remedy in Montana. At that time they say, Montana courts were acknowledged to have the power to enjoin state tax collection only when the state tax was clearly illegal; and since, before their suit, no Montana court had declared taxation of reservation Indians clearly illegal, the injunctive remedy was at that time uncertain and therefore inadequate for purposes of § 1341. Therefore, they contend that district court jurisdiction was properly invoked and should still be sustained.

The remedial certainty contemplated by § 1341 is that a state forum be empowered to consider claims that a tax is unlawful and to issue adequate relief. *See Tully v. Griffin, Inc., supra*, 429 U.S. at 74–76 & n.7, 97 S.Ct. at 223–224 n.7. It is not, as the Indians would have it, certainty that the forum will render a favorable decision or grant the particular relief sought. *See id.;*

---

**4.** Some have read *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979), as authority for the proposition that refund suits in federal court are not barred by § 1341. *See, e. g., North American Cold Storage Co. v. County of Cook*, 468 F.Supp. 424, 426 (N.D.Ill.1979); Note, *Fulton Market Cold Storage Co. v. Cullerton: Limiting Federal Jurisdiction in § 1983 Damage Actions Against Tax Officials*, 74 Nw.U.L.Rev. 284, 298 & n.68 (1979). We disagree. In *Fulton Mar-

*ket*, the Seventh Circuit concluded that a damage suit for allegedly wrongful conduct by tax officials was not barred. Unlike a claim for refund, the court noted that the award of damages did "not pivot upon the construction of some state statute or tax regulation which should more properly be construed by appropriate state courts." *Fulton Market Cold Storage Co., supra*, 582 F.2d at 1078. Moreover, the court cited with approval its earlier decision in *Gray v. Morgan, supra*, holding refund actions subject to § 1341.

*Coon v. Teasdale,* 567 F.2d 820, 822 (8th Cir. 1977) (per curiam). Remedial certainty does not require that state courts have previously confronted similar facts and rendered therein the relief a plaintiff now seeks.

*LaRoque's* holding that Montana courts may entertain claims that state taxation is illegal without first requiring prepayment of the disputed tax and may enjoin collection of taxes if found to be unlawful was neither novel nor unexpected. Before the complaint was filed in this case, suits seeking injunctive and declaratory relief from taxes alleged to be unlawful and unconstitutional had been successfully prosecuted in Montana courts without requirement that the tax be prepaid. *See, e. g., Northwest Airlines, Inc. v. Joint City–County Airport Board,* 154 Mont. 352, 463 P.2d 470 (1970);[5] *Hardin Auto Co. v. Alley,* 149 Mont. 1, 422 P.2d 346 (1967). Moreover, since 1891, Montana courts have been empowered by the legislature to enjoin state tax collection when the tax sought to be imposed is illegal or the property sought to be taxed exempt. Mont.Rev. Codes Ann., § 15–1–405. This power has been employed when, as here, taxpayer alleges that state taxation is completely impermissible. *See Northwest Airlines, Inc. v. Joint City–County Airport Board, supra,* 463 P.2d at 475.

We cannot say that the tax adjustment remedy applied to reservation Indians in *LaRoque* was an uncertain remedy when the Indians filed their suit in 1973.[6] As that Montana remedy is "plain, speedy and efficient", § 1341 clearly forbids the relief sought by the Indians' complaint.

### IV.

Even if upon analysis a state remedy is deemed adequate, § 1341 is not an absolute bar to federal jurisdiction in state taxation cases. Two exceptions have evolved, neither of which supports jurisdiction in this case.

### A.

The United States and its "instrumentalities" may sue in federal court to challenge state taxation. *See Department of Employment v. United States,* 385 U.S. 355, 358, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966); *Housing Authority of City of Seattle v. State of Washington, supra,* 629 F.2d at 1310. This circuit had previously indicated that individual Indians who could properly join as co–plaintiffs with the United States in a federal action to enjoin state tax collection could proceed even in the absence of the United States as a party under this federal instrumentality exception to § 1341. *See Moses v. Kinnear,* 490 F.2d 21, 24–25 (9th Cir. 1975); *Aqua Caliente Band of Mission Indians v. Helix Irrigation District,* 442 F.2d 1184, 1185–86 (9th Cir. 1971), *cert. denied,* 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972). The Indians claim entitlement to sue under this exception.

■ But in *Moe, supra,* the Supreme Court noted that the federal instrumentality doctrine was not alone enough to permit Indians to avoid the jurisdictional bar of § 1341. 425 U.S. at 471,[7] 96 S.Ct. at 1640.

---

**5.** *Northwest Airlines* involved a challenge to a state statute authorizing local authorities to impose certain taxes on airline operations. The Montana Supreme Court found the statute unconstitutional and enjoined imposition of taxes authorized by it. The case remains indicative of Montana's willingness to enjoin unlawful tax collection although the taxes invalidated there have subsequently been deemed constitutional. *See Evansville–Vanderburgh Airport Authority District v. Delta Airlines, Inc.,* 405 U.S. 707, 711 n.3, 92 S.Ct. 1349, 1352 n.3, 31 L.Ed.2d 620 (1972).

**6.** The Supreme Court has indicated that so long as a state provides one "plain, speedy and efficient" tax adjustment remedy, the adequacy of other remedies for purposes of § 1341 need not be considered. *See Tully v. Griffin, Inc., supra,* 429 U.S. at 76–77 & n.8, 97 S.Ct. at 224 n.8. Accordingly, we express no view on the adequacy of Montana's other tax adjustment remedies.

**7.** The Indians suggest that note 13 of the Supreme Court's opinion in *Moe* leaves open the possibility that the federal instrumentality doctrine as developed in *Moses* and *Agua Caliente* remains available to individual Indians. *Moe, supra,* 425 U.S. at 474 n.13, 96 S.Ct. at 1641 n.13. There is nothing in the footnote to suggest such a conclusion and the text of the

In the wake of *Moe,* we held the federal instrumentality analysis set forth in *Moses* and *Agua Caliente* inapplicable to suits not brought by an Indian tribe. *Navajo Tribal Utility Authority v. Arizona Department of Revenue,* 608 F.2d 1228, 1233–34 (9th Cir. 1979). That holding is dispositive here.

### B.

 Another exception to § 1341 is available to Indian tribes by virtue of 28 U.S.C. § 1362.[8] In *Moe,* the Supreme Court concluded that Congress intended by enactment of § 1362 to allow Indian tribes or governing bodies to raise federal questions in federal court when the United States chose not to do so in their behalf. *See Navajo Tribal Utility Authority, supra,* 608 F.2d at 1232. The Court construed § 1362 as conferring upon a tribe suing in a federal court the exemption to § 1341 which would have been available to the United States. *Moe, supra,* 425 U.S. at 474, 96 S.Ct. at 1641. This exception is not available to individual Indians, hence it is not available here. *See Navajo Tribal Utility Authority, supra,* 608 F.2d at 1233.

### C.

At oral argument, the Indians suggested that the opinion in *Navajo Tribal Utility Authority* at page 1234 left open the possibility that other exceptions to § 1341 might be available to individual Indians. That decision, however, addressed only the "instrumentality" and "co–plaintiff" exceptions we have already considered. It did not purport to recognize any others. The opinion did note that § 1341 would bar a tribal economic enterprise from seeking declaratory and injunctive state tax relief in federal court "even if we assumed the Tribe itself or its individual members, absent § 1362, could reap the benefits of the *Moe*

co–plaintiff rule with respect to § 1341, a question we do not reach." 608 F.2d at 1234. Such a comment hardly creates a new exception to § 1341 and the Indians have offered no authority or theory establishing a new exception. We do not choose to engage in speculation.

The complaint for injunction and refund fell within the purview of § 1341, and since Montana provides a "plain, speedy and efficient" means for contesting Montana taxes, the district court lacked jurisdiction.[9] Accordingly, the judgment is reversed and the case is remanded with directions to dismiss the complaint.

REVERSED.

---

Court's opinion is to the contrary. *Id.* at 473–74, 96 S.Ct. at 1641–1642.

**8.** 28 U.S.C. § 1362 provides:
The district court shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws or treaties of the United States.

**9.** In light of the absence of jurisdiction, we express no opinion on the substantive issues of Indian tax exemption resolved by the district court.