**HAWAIIAN TELEPHONE COMPANY, a Hawaii corporation, Plaintiff-Appellant,**

v.

**STATE of Hawaii DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, Joshua C. Agsalud, Individually, and as Director, etc., Defendants-Appellees,**

**and**

**International Brotherhood of Electrical Workers, AFL–CIO Local 1357, International Brotherhood of Electrical Workers, AFL–CIO Local 1260, and Hawaii State Federation of Labor, AFL–CIO, Intervenor-Defendants-Appellees.**

**No. 81–4050.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 21, 1982.

Decided Nov. 4, 1982.

---

See also, 9th Cir., 614 F.2d 1197.

Jared H. Jossem, Torkildson, Katz, Jossem, & Loden, Honolulu, Hawaii, for plaintiff-appellant.

Frank Yap, Jr., Sp. Deputy Atty. Gen., Honolulu, Hawaii, Marsha S. Berzon, Altshuler & Berzon, San Francisco, Cal., for defendants-appellees.

Before SCHROEDER, NELSON and BOOCHEVER, Circuit Judges.

NELSON, Circuit Judge:

Hawaiian Telephone Company (HAWTEL) appeals from the district court's dismissal of its 42 U.S.C. § 1983 (1976) action challenging the Hawaii unemployment tax scheme and the payment of state unemployment benefits to striking workers. The district court ruled that the State Tax Injunction Act, 28 U.S.C. § 1341 (1976), barred the action and that HAWTEL had a plain, speedy, and efficient remedy to challenge the tax in Hawaii state court.

We affirm.

## FACTS AND PROCEDURAL CONTEXT

Hawaii law permits strikers to collect unemployment compensation if their strike does not "substantially curtail" the productive operations of their employer.[1] In 1974, a number of HAWTEL employees went on strike. When the strike ended, the Hawaii Department of Labor began an inquiry to determine whether the strike had "substantially curtailed" the company's productive operations. If the strike had not done so, the Department would have had to order retroactive unemployment compensation benefits paid to HAWTEL's striking employees. HAWTEL then would have had to replenish the state employment fund in an amount correlative to the benefits paid to the strikers by paying an increased rate of unemployment tax.

Before completion of the departmental inquiry, HAWTEL brought suit in federal district court seeking to enjoin the Hawaii Department of Labor from continuing the investigation. HAWTEL originally argued that certain aspects of the Hawaii unemployment compensation scheme interfered with employers' collective bargaining rights and, thus, were preempted by federal law. This issue has been resolved against HAWTEL in this court's prior opinion, *Hawaiian Telephone Co. v. Hawaii Department of Labor*, 614 F.2d 1197 (9th Cir.), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2965, 64 L.Ed.2d 840 (1980). HAWTEL then filed a supplemental complaint, continuing the suit as an action under 42 U.S.C. § 1983 (1976), alleging various federal statutory and constitutional violations. The substance of the section 1983 complaint was that Hawaii's collection and administration of its unemployment tax and benefit scheme, which is partially federally funded, violated procedural due process, the Wagner-Peyser Act, 29 U.S.C. §§ 49 (1976) *et seq.*, and several other federal statutes implicated in Hawaii's unemployment compensation program.[2]

---

1. Hawaii Rev.Stat. § 383–30 (1978) Disqualification for Benefits. "An individual shall be disqualified for benefits:

   "(4) Labor dispute. For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed. . . ."

The Hawaii Supreme Court has interpreted the phrase "stoppage of work" to mean a "substantial curtailment" of the employer's productive operations. *Meadow Gold Dairies v. Wiig*, 50 Hawaii 225, 437 P.2d 317 (1968).

2. The Wagner-Peyser Act created

   "an interstate system partially funded by federal money, that operates through local,

HAWTEL sought injunctive and declaratory relief against the payment of unemployment benefits to its strikers, so that HAWTEL would not have to replenish the state unemployment fund for payments made.

■ The district court concluded that HAWTEL actually sought to challenge the "assessment, levy, or collection" of tax under Hawaii's unemployment compensation tax scheme. The court held that the State Tax Injunction Act, 28 U.S.C. § 1341 (1976), barred the action and that Hawaii provided a plain, speedy, and efficient remedy to challenge the tax in state court.[3] The action was dismissed for want of jurisdiction.

The Hawaii Department of Labor has since paid over one million dollars in retroactive unemployment compensation benefits to former HAWTEL strikers. HAWTEL unsuccessfully appealed those awards in a series of administrative proceedings.

## ISSUES

The issues on appeal are:

I.  Does HAWTEL have standing to sue?

II.  Does the State Tax Injunction Act bar HAWTEL's action:

A.  because it is a challenge to a state taxation scheme; or

B.  because it is a challenge to a joint federal-state taxation scheme?

III.  Is the State Tax Injunction Act inapplicable because HAWTEL has no plain, speedy, and efficient remedy in Hawaii courts?

### I

#### Standing

■ We must first determine whether HAWTEL has standing to maintain this action.[4] The determination depends on the characterization of HAWTEL's claim.

■ HAWTEL's action can be characterized in two ways: First, HAWTEL frames an action to challenge federal expenditures to Hawaii's unemployment fund. HAWTEL lacks standing to sue under such a theory. A taxpayer may challenge a federal expenditure made pursuant to the taxing and spending clause (U.S. Const., art. I, § 8), only if the taxpayer shows that the challenged expenditure exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power. *Flast v. Cohen,* 392 U.S. 83, 102–103, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). HAWTEL does not allege that

State-controlled offices that are subject to the regulations of the Secretary of Labor and that receive applications for work and workers and make a series of attempts in wider and wider areas to fill the applications.

The Act's basic objection was to establish an interstate system for the recruiting and transfer of labor...."
*Gomez v. Florida State Unemployment Serv.,* 417 F.2d 569, 570–72 (5th Cir. 1964).

HAWTEL asserted that Hawaii administers certain unemployment benefit provisions in violation of federal guidelines.

In addition to the Wagner-Peyser Act, other federal statutes that are partially involved in the joint administration of the Hawaii unemployment scheme include 26 U.S.C. § 3304 (federal certification procedures), 26 U.S.C. §§ 3301–3302 (employer tax credits), and 42 U.S.C. §§ 501 *et seq.* (state eligibility for federal funding).

If the state ceases to have a plan for public employment offices that complies with the Wagner-Peyser Act, the Secretary of Labor is empowered after a hearing to withhold future federal funding. 42 U.S.C. § 503(b)(2); 29 C.F.R. § 601.5(a)(2).

3. 28 U.S.C. § 1341, Taxes by States, provides:
"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."
The State Tax Injunction Act embodies a strong federal policy of comity and noninterference with state taxation and state tax administration. *Fair Assessment in Real Estate, Inc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 522 n. 29, 522–28, 101 S.Ct. 1221, 1233 n. 29, 1233–37, 67 L.Ed.2d 464 (1981); *Mandel v. Hutchinson,* 494 F.2d 364, 366 (9th Cir. 1974).

4. A plaintiff has standing to invoke federal court jurisdiction only when the plaintiff himself has suffered "some illegal action [citations omitted]." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

allocation of federal funds to Hawaii under the Wagner-Peyser Act violates a specific constitutional limitation. Moreover, HAWTEL does not allege that the federal government has acted improperly or violated federal law in contributing funds to Hawaii's unemployment compensation fund. Rather, HAWTEL argues that Hawaii improperly administers its unemployment program, illegally grants benefits to strikers, and illegally collects unemployment taxes from employers. This allegation is not sufficient to confer standing on HAWTEL to challenge federal contributions to the state program.

■ Second, however, if characterized as an action challenging Hawaii's administration of the unemployment program, HAWTEL's suit establishes standing. A taxpayer may establish standing to challenge a state's administration of a partially federally funded program by alleging that the state's administration of the program causes the taxpayer a direct and identifiable injury. *See Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). *See also Gomez v. Florida State Employment Service,* 417 F.2d 569 (5th Cir. 1964). HAWTEL's complaint may be read to allege that Hawaii's administration of the state unemployment compensation benefit program directly affects and injures HAWTEL, because the amount of unemployment compensation tax that HAWTEL must pay into the state fund is directly determined by the amount of unemployment benefits the state awards to HAWTEL's employees. Therefore, HAWTEL has standing to challenge the Hawaii unemployment compensation-taxation scheme, because its unemployment tax liability will be directly affected.

Under this characterization, HAWTEL challenges the Hawaii unemployment benefit program, its administration, its funding, and HAWTEL's resulting tax liability. Accordingly, HAWTEL necessarily challenges the underlying "assessment, levy, or collection" of a state tax, to which the State Tax Injunction Act applies on its face.

## II
### Application of the State Tax Injunction Act

#### A. State Taxation Schemes

■ HAWTEL argues that even if its action is characterized as a challenge to a state taxation scheme, the State Tax Injunction Act should not bar consideration, because suits filed under 42 U.S.C. § 1983 come within an exception to the State Tax Injunction Act. The law in this circuit, however, is that section 1983 does not create an exception to the State Tax Injunction Act. *Dillon v. Montana,* 634 F.2d 463 (9th Cir. 1980); *Kelly v. Springett,* 527 F.2d 1090, 1093–94 (9th Cir. 1975).[5]

HAWTEL argues that recent Supreme Court cases have overruled these Ninth Circuit decisions. *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1980); *Fair Assessment in Real Estate v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). A review of those decisions, however, reveals that the Court has not permitted a section 1983 challenge to a state tax.

In *Rosewell,* plaintiffs filed suit under section 1983 in federal district court, challenging Illinois state income tax provisions on due process and equal protection grounds. The court determined only that Illinois provided a "plain, speedy, and efficient remedy" in state court, so that plaintiffs' suit was barred by the State Tax Injunction Act. The Supreme Court did not expressly consider the effect of section 1983 suits on the Tax Injunction Act. It did, however, refuse to let plaintiffs proceed under section 1983.

In *Fair Assessment in Real Estate, Inc. v. McNary,* 454 U.S. at 109–115, 102 S.Ct. at 182–5, taxpayers brought a section 1983 action in federal court alleging deprivation

---

**5.** HAWTEL seeks both declaratory and injunctive relief. *Dillon v. Montana,* 634 F.2d at 464–65, also sets forth the Ninth Circuit rule that the Tax Injunction Act bars actions seeking declaratory judgments as well as injunctions under § 1983. *See also California v. Grace Brethren Church,* —— U.S. —— at —— ——, 102 S.Ct. 2498 at 2508–2510, 73 L.Ed.2d 93.

of equal protection and due process by unequal taxation of real property. They sought money damages. The Court again did not definitely resolve the relationship between section 1983 and the State Tax Injunction Act, but held that the principle of comity alone bars taxpayers' damages actions brought in federal courts under section 1983 to redress the allegedly unconstitutional administration of a state tax system.

The Supreme Court has not explicitly considered whether section 1983 might create an exception to the State Tax Injunction Act. In accordance with the existing law of this circuit, we hold that section 1983 is not an exception to the State Tax Injunction Act. We also note that *McNary* suggests that the principle of comity alone would bar this action. *Id.*

### B. Federal-State Taxation Schemes

HAWTEL argues that although Ninth Circuit law prohibits a section 1983 exception to the State Tax Injunction Act, an exception should be allowed in the present case because Hawaii's unemployment compensation program is really a joint federal-state taxation scheme rather than a "pure" state tax scheme. The apparent rationale for such a distinction is that the comity concerns underlying the State Tax Injunction Act are lessened when a state tax scheme contains a "federal statutory ingredient." [6]

■ HAWTEL's position has been severely undercut by the Supreme Court's recent decision in *California v. Grace Brethren Church,* —— U.S. ——, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). In that case, a number of California churches and religious schools brought suit in federal district court to enjoin the Secretary of Labor from conditioning his approval of the California unemployment insurance program on the program's coverage of plaintiffs' employees, and to enjoin California from collecting both tax information and unemployment

compensation tax from plaintiffs. The Supreme Court held that the State Tax Injunction Act deprived the district court of jurisdiction to issue declaratory and injunctive relief, although the challenged taxation scheme contained joint federal-state elements. It also held that taxpayers had a "plain, speedy, and efficient" state court remedy to obtain judicial review of their constitutional claims. Therefore, the existence of "federal statutory ingredients" in a state tax did not exempt challenges to that tax from the bar of the State Tax Injunction Act. Thus, *Grace Brethren* precludes HAWTEL's argument that challenges to joint federal-state tax programs escape the jurisdictional bar of the State Tax Injunction Act.

HAWTEL argues that *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), confers federal jurisdiction on the present section 1983 action. This argument is not persuasive as *Thiboutot* is easily distinguished. *Thiboutot* did not involve a challenge to state taxes and was not an action brought in federal district court. *Thiboutot* held that federal statutory violations, as well as constitutional and civil rights violations, were actionable in state court under section 1983. Thus, *Thiboutot* did not expand or confer federal jurisdiction over all section 1983 actions alleging statutory and constitutional violations.

■ We agree with HAWTEL that the Hawaii unemployment compensation program contains a federal element. We do not agree that because of this federal element, suits to enjoin the assessment or collection of Hawaii unemployment taxes are not barred by the State Tax Injunction Act. The program at issue here is a state tax program. It involves unemployment taxes that HAWTEL will have to pay to the State of Hawaii under a program that Hawaii will administer. The State Tax Injunction Act and the principle of comity bar HAWTEL's section 1983 challenge to as-

---

**6.** See note 2 above for the federal statutes involved in funding and administering Hawaii's unemployment compensation program. HAW-

TEL asserts that these statutes constitute the "federal ingredient" in the program.

sessment or payment of the state tax. *See Fair Assessment in Real Estate v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271; *Dillon v. Montana,* 634 F.2d 463; *Kelly v. Springett,* 527 F.2d at 1093–94.

## IV

### Adequacy of State Remedy

■ HAWTEL contends finally that even if the State Tax Injunction Act applies to this case, federal jurisdiction is proper because Hawaii does not provide a "plain, speedy, and efficient remedy" to challenge the unemployment tax assessment in state court. 28 U.S.C. § 1341. A state court remedy is "plain, speedy, and efficient" within the meaning of the State Tax Injunction Act if it "provides the taxpayer with a 'full hearing and a judicial determination' at which she may raise any and all constitutional objections to the tax." *Rosewell v. LaSalle National Bank,* 450 U.S. at 512–515, 101 S.Ct. at 1229–30.

■ An employer has several methods available to challenge unemployment tax assessments in Hawaii state court. At an administrative hearing, an employer may contest a claimant's eligibility for benefits both before payment, and, in the event of an adverse determination, may appeal before an impartial referee. Hawaii Rev. Stat. §§ 383–36 to 383–38. Judicial review of the decision is then available as a matter of right; the cases have priority "over all other civil cases except proceedings arising under the Workers' Compensation Law." Hawaii Rev.Stat. § 383–41. If benefit payments are determined, either in the administrative process or upon judicial review, to have been awarded erroneously, the payment is not included in calculating the employer's tax rate. Hawaii Rev.Stat. § 383–65(g). *See* Hawaii Rev.Stat. § 383–44.

HAWTEL contends that these procedures are inadequate because they do not provide for review of federal constitutional and statutory issues. The Hawaii statutes do not limit consideration to nonfederal claims. The jurisdiction review statute specifies that review of constitutional and statutory claims is proper. Hawaii Rev.Stat. § 91–14(g)(1).[7] Thus, any federal claims may properly be raised at the administrative level. Judicial review of an administrative tribunal's decision is "confined to the record" under Hawaii Rev.Stat. § 91–14(f). Section 91–14 does not bar the reviewing court from deciding federal issues, because the administrative tribunal that first considers the case is not precluded from deciding them.

Two statutory rebate procedures also are available to recover erroneously assessed taxes. Both procedures permit a full court hearing on the validity of the assessing agency's determination, at which federal claims may be raised. Hawaii Rev.Stat. §§ 383–74, 383–76.

Finally, Hawaii law provides for equitable relief if legal remedies prove inadequate. *See* Hawaii Civ.Pro. Rule 65; Hawaii Rev.Stat. § 603–21.7; *York v. State,* 53 Hawaii 557, 498 P.2d 644 (1972).

*Rosewell,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464, leaves little room to contend that state procedural remedies to tax assessment and collection are not plain, speedy, and efficient, even if the state remedies are burdensome. HAWTEL has many available state remedies to challenge benefit payments to its employees and its own resulting tax rate. Hawaii procedures provide a "full hearing and judicial determination" and mandatory judicial review of constitutional and statutory issues. *Id.* at 514, 101 S.Ct. at 1229. The Hawaii remedies are plain, speedy, and efficient.

The district court's decision dismissing this action as barred by the State Tax Injunction Act, 28 U.S.C. § 1341, is

AFFIRMED.

---

**7.** Hawaii Rev.Stat. § 91–14(g)(1) (1978) provides that "administrative determinations may be reversed or modified on judicial review if the tribunals' findings, conclusions, decisions or orders" are "in violation of constitutional or stat-

utory provisions." Subsection (4) adds as an additional ground for reversal "[a]ffected by other error of law." So long as a party raises federal legal issues, they become part of the record.