UNITED STATES of America, Appellee,

v.

**Randolph Gerard CURNEW, Appellant.**

No. 85–1869.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1985.

Decided April 16, 1986.

Rehearing Denied May 13, 1986.

Gary L. Hoffman, Omaha, Neb., for appellant.

Thomas D. Thalken, Asst. U.S. Atty., Omaha, Neb., for appellee.

Before LAY, Chief Judge, FAGG, Circuit Judge, and ROSENBAUM,* District Judge.

FAGG, Circuit Judge.

Randolph Curnew appeals the judgment of the district court entered on his conditional plea of guilty to a charge of being unlawfully present in the United States in violation of 8 U.S.C. § 1326. We affirm.

On February 22, 1985, Curnew was indicted by a Nebraska grand jury under 8 U.S.C. § 1326. Section 1326 forbids an alien who has previously been arrested and deported from the United States from reentering this country without first obtaining the consent of the Attorney General. *Id.* § 1326(1)–(2)(A). A previously deported alien who fails to obtain permission may avoid conviction, however, if the alien can establish that advance consent was not required prior to reentering the country. *Id.* § 1326(2)(B).

Curnew, a Canadian citizen who was born in Canada, concedes that he is an alien and previously has been arrested and deported from the United States. *See id.* § 1326(1). Curnew also concedes he did not receive permission from the Attorney General prior to reentering the United States. *See id.* § 1326(2)(A). Despite these concessions, Curnew seeks to avoid conviction by affirmatively establishing that he was not required to obtain advance consent before reentering the country. *See id.* § 1326(2)(B).

As a basis for establishing this affirmative defense, Curnew relies on 8 U.S.C. § 1359. Section 1359 provides:

Nothing in this subchapter shall * * * affect the right of American Indians born in Canada to pass the borders of the United States, but such right shall extend only to persons who possess at least 50 per centum of blood of the American Indian race.

*Id.* § 1359. The government concedes that section 1359 is applicable to a prosecution brought under section 1326.

To meet the requirement of section 1359, Curnew was required to establish that he possesses at least 50 per centum American Indian blood. In preparing to make this showing, Curnew retained a cultural anthropologist as an expert witness. This expert was retained because Curnew could offer no evidence concerning the degree of American Indian blood that he possessed. We agree with Curnew that a properly qualified cultural anthropologist might be entitled to testify in this type of case.

Prior to trial, the district court conducted a hearing to determine the admissibility of the expert's testimony. At that hearing, the expert was subject to both direct and cross-examination.

After considering the expert's testimony and after closely examining the expert, the district court concluded that the expert would be allowed to testify and present an opinion to the effect that based on her research Curnew did possess some amount of Indian blood. The district court determined further, however, that the expert would not be allowed to offer an opinion that Curnew possessed 50 per centum or more American Indian blood. The district court found that an opinion that Curnew possessed 50 per centum or more American Indian blood would be entirely uncertain and speculative and would confuse rather than enlighten the jury. *See* Fed.R.Evid. 403; *see also* Fed.R.Evid. 702–704 (dealing with expert testimony). In a related ruling, the district court refused to allow Curnew to present evidence of his social and cultural identity.

Following these rulings by the district court, Curnew entered a conditional plea of guilty, specifically reserving the right to

* THE HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

appeal the district court's rulings. Curnew's appeal is now before this court.

Curnew first challenges the district court's reading of section 1359. The district court, in construing section 1359, took Congress at its word and concluded that section 1359 required Curnew to establish that he possesses at least 50 per centum American Indian blood.

Curnew argues, however, that section 1359 is not actually a blood-line test involving a determination of the amount of American Indian blood possessed by an individual. Rather, Curnew essentially argues that the 50 per centum requirement will be met so long as the individual simply possesses some unquantifiable amount of Indian blood and has some cultural or social identity as an Indian. In advancing this position, Curnew relies on cases that have defined the term "Indian" as being made up of two distinct components: (1) some identifiable Indian ancestry (*i.e.,* some Indian blood); and (2) recognition (personal or by others) of the individual as an Indian. *See, e.g., United States v. Dodge,* 538 F.2d 770, 786–87 (8th Cir.1976), *cert. denied sub nom. Cooper v. United States,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 547 (1977); *Turtle Mountain Band of Chippewa Indians v. United States,* 203 Ct.Cl. 426, 490 F.2d 935, 942–44 (1974); *Ex parte Pero,* 99 F.2d 28, 30–31 (7th Cir.1938), *cert. denied sub nom. Lee v. Pero,* 306 U.S. 643, 59 S.Ct. 581, 83 L.Ed. 1043 (1939); *Dillon v. State of Montana,* 451 F.Supp. 168, 175–76 (D.Mont.1978), *rev'd on other grounds,* 634 F.2d 463 (9th Cir.1980); *see also* F. Cohen, Handbook of Federal Indian Law 24 (1982).

The cases relied on by Curnew are irrelevant to the resolution of this case. In each of these cases no statutory definition of the term "Indian" was provided by Congress, and thus the courts involved were compelled to define the term. In such cases, the courts reasonably required the individual to possess both some Indian blood and some sense of cultural or social identity as an Indian.

■ Unlike the cases relied upon by Curnew, in this instance Congress has not left it to the courts to determine what must be proven to qualify for the protection of section 1359. Rather, Congress has itself defined that class of individuals who will fall within the scope of section 1359. Specifically, only those individuals who possess at least 50 per centum American Indian blood will be protected from prosecution under 8 U.S.C. § 1326. Whether in addition the individual identifies himself as or is viewed as an Indian by others is not determinative.

■ Clearly, Congress knows how and has the right to define the term Indian when it chooses to do so. *See* F. Cohen, *supra,* at 23–24; *see, e.g.,* 25 U.S.C. §§ 297, 393a, 450b(a), 479, 480, 1452, 1801 (various statutory definitions of the term Indian). And, when Congress has specifically defined the term Indian, this court has no choice but to follow the clear and unambiguous requirement of that definition. Thus, to establish a defense under section 1359, an individual must present some combination of evidence from which the finder of fact can reasonably conclude that the individual in fact possesses 50 per centum or more American Indian blood. Proof only that an individual possesses some unidentifiable degree of Indian blood without more will be insufficient.

■ Having concluded that section 1359 is a blood-line test requiring an individual to establish a specific percentage of American Indian blood, this court must next determine whether the district court acted improperly when it excluded a portion of the expert's proposed testimony. Whether to admit or exclude expert testimony is committed to the sound discretion of the district court. This court will reverse a district court's decision to exclude evidence only if the district court has abused its discretion. *United States v. De-Luna,* 763 F.2d 897, 912 (8th Cir.), *cert. denied sub nom. Thomas v. United States,* — U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); *United States v. Udey,* 748 F.2d 1231, 1242 (8th Cir.1984), *cert. denied,* —

U.S. ——, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985).

■ In this case, we conclude the district court did not abuse its discretion in refusing to allow the expert to offer an opinion with respect to the percentage of Indian blood possessed by Curnew. Here, the evidence developed by the expert was at best inconclusive, consisting only of an incomplete family tree and relatively insubstantial cultural or social evidence. Curnew himself had no idea what amount of Indian blood he possessed and had access to no documents or records that would shed light on this inquiry.

Based on this meager evidence, the expert was able to conclude reasonably that Curnew possessed some amount of Indian blood. However, the expert also admitted that she could not reasonably state that Curnew possessed 50 per centum American Indian blood and that it would be professionally irresponsible of her to do so without further evidence. In light of this admission, we conclude the district court acted appropriately when it ruled the expert would be allowed to testify that Curnew possessed some Indian blood but would not be allowed to testify with respect to the percentage of Indian blood possessed by Curnew.

The portion of the expert's testimony that would have been admitted by the district court, while not compelling, might have been sufficient to raise a question of fact for the jury. Certainly, irrefutable evidence of Indian ancestry need not be presented by a defendant before an issue of fact is created. However, we need express no opinion on how much evidence is necessary to raise an issue of fact. Curnew pled guilty before trial and before any issue of sufficiency could have been raised by the prosecution or the district court.

■ We also conclude the district court did not commit reversible error in refusing to allow Curnew to testify as to his cultural identity. Although no specific offer of proof was made by Curnew, in essence it appears that Curnew would have testified (1) that he was considered by himself and others to be an Indian; (2) that his father's mother was called "an old squaw" and spoke a few Indian words; and (3) that his mother's father was called "an old Indian."

This relatively innocuous testimony would have added little or nothing to the testimony of the expert and at best would merely have supported the expert's conclusion that Curnew possessed *some* Indian blood. Curnew's testimony would not, however, have significantly assisted the jury in determining the *percentage* of Indian blood possessed by Curnew. And, as stated, the percentage of Indian blood rather than the mere presence of Indian blood is the key inquiry under section 1359. While the district court might properly have admitted this testimony, it did not abuse its discretion in refusing to do so.

Finding no abuse of discretion on the part of the district court, we affirm Curnew's conviction for entering the United States in violation of 8 U.S.C. § 1326.

LAY, Chief Judge, dissenting.

I respectfully dissent. I certainly agree that when Congress enacted section 1359, it intended to limit the statute's application to persons whose ancestry is "50 per centum of blood" of the American Indian race. So much is clear from the face of the statute. Understood literally, the statute would require anyone seeking to come within its protections to prove that at least half of his or her forebears were living on this continent before Columbus arrived. The majority opinion holds that section 1359 requires "some combination of evidence from which the finder of fact can reasonably conclude that the individual in fact possesses 50 per centum or more American Indian blood. Proof only that an individual possess some unidentifiable degree of Indian blood without more will be insufficient." In this case, Curnew's expert admitted that she could not reasonably state that Curnew possessed fifty percent American Indian blood. She was quite candid and fair in stating the obvious. The majority concludes that unless she could

state such an opinion within a reasonable degree of certainty as an expert, she would not be able to testify.

In reaching these conclusions, the majority has allowed the scientific ring of the term "50 per centum" to overwhelm a common sense meaning. The majority imposes an evidentiary requirement virtually prohibiting any individual from proving Indian ancestry under this provision, a result Congress could not have intended. The majority leaves entirely unclear the quantum of evidence it believes necessary for a jury to determine reasonably the proportion of the defendant's Indian ancestry. This approach obscures the difficulty a defendant confronts in meeting the requirement imposed. The initial burden placed on a defendant to even identify the members of a family tree encompassing only three or four generations is prohibitively onerous. However, under the majority's literal reading of the statute, going back even four generations would likely not be sufficient since tracing ancestry that far would hardly begin the process of tracing a "blood line" back to the pre-Columbian age. The majority also leaves unanswered the question of how the racial make-up of a defendant's more distant ancestors is to be determined, even assuming the highly questionable premise that sufficient "bloodline" evidence of his or her ancestors' identities would reasonably be available.

A more flexible rule on the admissibility of expert cultural evidence would more closely comport with the general rule that expert testimony should be admitted when it will likely assist the trier of fact in arriving at the truth. *United States v. Luschen*, 614 F.2d 1164, 1169 (8th Cir.1980) (quoting *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 857–58 (8th Cir.1975)). A trial court should be mindful that "it is now for the jury, with the assistance of vigorous cross-examination, to measure the worth of the opinion," *Singer Co. v. E.I. du Pont de Nemours & Co.*, 579 F.2d 433, 443 (8th Cir.1978), and not for the court to make that determination in the guise of a ruling on relevancy.

Moreover, it would appear that the fundamental difference between the district court's view, as affirmed by the majority, and my view, is the priority I would give to the basic principle that in a criminal proceeding a party should always have the right to have the jury pass upon the reasonableness of the theory of his or her case. Thus, the defendant should be able to come forward with any and all proof as to his cultural identity. Certainly it was important here that Curnew be allowed to testify that he was considered by himself and others to be a full blooded Indian, that his father's mother was called an "old squaw" and spoke the Indian language, and that his mother's father was called an "old Indian." This testimony, along with whatever proof of cultural identity that the expert could add, would in my judgment create a fair inference for the defendant to argue to the trier of fact that he did not violate section 1326. There are many things within life's experiences that cannot be proven to an absolute certainty. A statutory exemption to criminal prosecution should not require proof of that which cannot be proved. Under section 1359 Congress did not intend proof of the impossible.

The relevancy of Curnew's proffered testimony should also be considered in light of his burden of proof on the issue of his Indian ancestry. Although Curnew submits his defense under section 1359 as an affirmative defense, the government nonetheless bears the ultimate burden to prove that he violated section 1326. Once Curnew proffers testimony that he was exempt from section 1326 because he is an American Indian, then the burden of production by the defendant is satisfied. *Cf. Stump v. Bennett*, 398 F.2d 111, 118–20 (8th Cir. 1968) (burden of persuasion on government unaffected by assertion of alibi defense). In any case, whether Curnew was or was not exempt as a 50% blood Indian was a question of fact for the jury and not one of law for the court. It thus should be for the jury to decide the weight of the testimony offered by Curnew. Accordingly, I would conclude that the trial court abused its

discretion in excluding Curnew's expert's testimony and Curnew's own testimonial evidence from the jury's consideration.